754 A.2d 1177

IN THE MATTER OF THE LIQUIDATION OF
INTEGRITY INSURANCE COMPANY.

Argued May 1, 2000—Decided July 26, 2000.

*Michael E. Goldman*, Deputy Attorney General, argued the cause for appellant and cross-respondent Commissioner of Banking and Insurance, (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney and *Sills Cummis Radin*, Special Counsel, attorneys; *Nancy Kaplen*, Assistant Attorney General, of counsel; *Mr. Goldman, Thalia P. Cosmos*, Deputy Attorney General, *Steven S. Radin, Thomas S. Novak* and *Steven M. Ziolkowski*, on the briefs).

*David M. Spector*, a member of the Illinois bar, argued the cause for respondent and cross-appellant Munich Reinsurance Company, (*Winne, Banta, Rizzi, Hetherington & Basralian*, attorneys; *Mr. Spector, Donald A. Klein* and *Brian J. Neff*, of counsel and on the briefs).

The opinion of the court was delivered by

LONG, J.

In this case we are required to determine the nature and extent of the pretrial discovery to which the creditors of an insolvent insurer are entitled as against the Commissioner of Insurance (Commissioner) acting as liquidator. More specifically, the issue to be addressed is whether confidentiality claims and privilege may preclude or limit discovery of documents characterized by the Commissioner as deliberative in nature.

## I.

Prior to 1986, Integrity Insurance Company (Integrity) was a property and casualty insurer licensed to transact business in every state. Most of its risks were subject to reinsurance. Many of the risks (for example, environmental and products liability) were not expected to translate into reportable claims until many years after the policies were issued. In addition, Integrity wrote excess and umbrella policies, under which a duty to pay does not arise until underlying coverages are exhausted.

In December 1986, the Superior Court, Chancery Division entered an order declaring Integrity to be insolvent. The court directed the rehabilitation of Integrity and appointed the New Jersey Commissioner of Insurance and his statutory successors in office as rehabilitators. On March 27, 1987, the court ordered Integrity into liquidation, and appointed the Commissioner as liquidator pursuant to *N.J.S.A.* 17:30C–9. The Commissioner was directed to marshal Integrity's assets and liquidate its liabilities for the benefit of all claimants against its estate.

On June 17, 1996, the Commissioner filed a Final Dividend Plan (FDP) with the court to effect the early termination of the Integrity estate. That novel plan to wind up Integrity's affairs essentially reduced the actuarial estimates of Integrity's future liabilities to present value. Briefly summarized, under the FDP, the liquidator was to

> (1) estimate and allow the present value of all Contingent Claims, including claims for IBNR [1] losses; (2) collect from reinsurers the present value of any reinsurance that will be due on such claims; (3) arrive at a final determination of Integrity's assets and liabilities; (4) calculate the percentage to be paid on the Fourth Priority [policyholder] claims; and (5) pay a final dividend on all claims accorded Fourth Priority or higher status.

The FDP will require Integrity's reinsurers to pay off approximately $800 million dollars of debt.

---

[1] Incurred but not reported.

Munich Reinsurance Company (Munich) and other reinsurers oppose the FDP that has been submitted to the court for approval. During discovery, the Commissioner refused to produce certain documents that Munich requested. The Commissioner prepared a "privilege log" listing and describing over 100 documents with respect to which she asserted the deliberative process privilege, the work product privilege, or a combination of the two. The work product and attorney client privileges are not at issue on this appeal. According to the Commissioner, the documents fall into four general categories:

(1) Correspondence summarizing the issues raised and the discussion of those issues that occurred at the monthly status meeting with staff members;

(2) Departmental memoranda and other correspondence relative to issues discussed or to be discussed at the monthly status meeting;

(3) Departmental memoranda discussing, referencing or suggesting advice of counsel litigation strategy and/or potential policy decisions;

(4) Reports of management/administrative studies of Integrity prepared by independent consultants.

The trial court held that there is a deliberative process privilege in New Jersey for inter- or intra-agency communications, but that when the Commissioner is acting as liquidator he or she is not functioning as a government official and, therefore, is not subject to the privilege. In reaching that result, the court observed that the FDP describes the liquidator as "[t]he New Jersey Commissioner of Insurance, acting solely in the capacity of receiver, not as regulator, . . ." and that a number of states, including New Jersey, that have adopted the Uniform Insurers Liquidation Act in whole or part, have recognized that a state insurance commissioner is not acting as a government regulator when serving in the capacity of liquidator. According to the trial court, the Commissioner, functioning as liquidator, "for all intents and purposes slips into the shoes of the insolvent insurance company," and cannot assert the deliberative process privilege.

By leave granted, the Commissioner appealed. The Appellate Division, citing *McClain v. College Hosp.*, 99 *N.J.* 346, 353, 492 *A.*2d 991 (1985), held that although deliberative process materials may not always be discoverable, "no such qualified privilege

exists." *In re Liquidation of Integrity Ins. Co.*, 321 *N.J.Super.* 399, 415, 729 *A.*2d 438 (App.Div.1999). The court went on to conclude, however, that the Commissioner acts in a public capacity as a liquidator and can invoke *N.J.R.E.* 515 to protect official information of the State. Thus, it remanded the case for an *in camera* hearing to determine whether the documents the Commissioner seeks to protect are relevant and, if so, whether they nonetheless may be withheld from disclosure pursuant to *N.J.R.E.* 515. *Id.* at 416–19, 729 *A.*2d 438.

The Commissioner moved for leave to appeal and we granted the motion. 163 *N.J.* 70, 747 *A.*2d 280 (2000). The Commissioner asks that we declare that a deliberative process privilege exists in New Jersey and that it is entirely distinct from *N.J.R.E.* 515, which the Commissioner has not invoked in this case.

## II.

■ Generally, pursuant to *Rule* 4:10–2(a), parties may obtain discovery regarding any non-privileged matter that is relevant to the subject of a pending action or is reasonably calculated to lead to the discovery of admissible evidence. Our discovery rules are to be liberally construed because we adhere to the belief that justice is more likely to be achieved when there has been full disclosure and all parties are conversant with all available facts. *Payton v. New Jersey Turnpike Auth.*, 148 *N.J.* 524, 535, 691 *A.*2d 321 (1997) (citing *Catalpa Inv. Group, Inc. v. Franklin Tp. Zoning Bd. of Adjustment*, 254 *N.J.Super.* 270, 273, 603 *A.*2d 178 (Law Div.1991)).

■ To determine whether the materials sought by the reinsurers are discoverable, their potential relevance is the initial inquiry. In deciding whether evidence is relevant the focus is on the "logical connection between the proffered evidence and a fact in issue[.]" *State v. Hutchins*, 241 *N.J.Super.* 353, 358, 575 *A.*2d 35 (App.Div.1990). *N.J.R.E.* 401 defines relevant evidence as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action."

Performing her role as a liquidator, the Commissioner is governed by *N.J.S.A.* 17:30C–1 to –31, New Jersey's version of the Uniform Insurers Liquidation Act (ULA or Act). Under the Act, in crafting an FDP, the Commissioner is required to weigh all interests and to perform a fair and efficient liquidation of the insolvent company. *In re Liquidation of Integrity Ins. Co.,* 231 *N.J.Super.* 152, 157, 555 *A.*2d 50 (Ch.Div.1988). The Commissioner is subject to a fiduciary obligation to all creditors of the insolvent company. *Ibid.*

Thus, the documents underlying the Commissioner's decision regarding the FDP are plainly relevant to the reinsurers' challenge to the extent that they pertain to the fairness and feasibility of the plan, and to the Commissioner's exercise of her fiduciary obligation to all of Integrity's creditors, or are likely to lead to admissible evidence on those subjects. Although relevance creates a presumption of discoverability, confidentiality may be maintained if an evidentiary privilege exists. *Payton, supra,* 148 *N.J.* at 539, 691 *A.*2d 321. "A privilege reflects a societal judgment that the need for confidentiality outweighs the need for disclosure." *Ibid.* (citing *Hague v. Williams,* 37 *N.J.* 328, 335, 181 *A.*2d 345 (1962)). The Commissioner contends that the deliberative process privilege shields the documents sought by the reinsurers.

## III.

The deliberative process privilege is a doctrine that permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated. *NLRB v. Sears, Roebuck & Co.,* 421 *U.S.* 132, 150, 95 *S.Ct.* 1504, 1516, 44 *L.Ed.*2d 29, 47 (1975). Federal courts have long recognized the privilege that is rooted in the notion that the sovereign has an interest in protecting the integrity of its deliberations. The earliest federal case adopting the privilege is *Kaiser Alum. & Chem. Corp. v. United States,* 141 *Ct.Cl.* 38, 157 *F.Supp.*

939 (1958). The court in *Kaiser* expressed the rationale underlying the rule:

> Free and open comments on the advantages and disadvantages of a proposed course of governmental management would be adversely affected if the civil servant or executive assistant were compelled by publicity to bear the blame for errors or bad judgment properly chargeable to the responsible individual with power to decide and act. Government from its nature has necessarily been granted a certain freedom from control beyond that given the citizen. It is true that it now submits itself to suit but it must retain privileges for the good all.

> There is a policy involved in this claim of privilege for this advisory opinion-the policy of open, frank discussion between subordinate and chief concerning administrative action.

[<em>Id.</em> at 945–46.]

The privilege and its rationale were subsequently adopted by the federal district courts and circuit courts of appeal. *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.1993); *Federal Trade Comm'n v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984); *McClelland v. Andrus*, 606 F.2d 1278, 1287 (D.C.Cir.1979); *SEC v. National Student Mktg. Corp.*, 538 F.2d 404, 406 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977); *ISI Corp. v. United States*, 503 F.2d 558, 559 (9th Cir.1974); *Freeman v. Seligson*, 405 F.2d 1326, 1339 (D.C.Cir.1968); *Olson Rug Co. v. NLRB*, 291 F.2d 655, 661 (7th Cir.1961); *Scott v. PPG Indus., Inc.*, 142 F.R.D. 291, 292 (N.D.W.Va.1992); *Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y.1986); *Liuzzo v. United States*, 508 F.Supp. 923, 937 (E.D.Mich.1981); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F.Supp. 577, 580 (E.D.N.Y.1979); *EEOC v. Los Alamos Constructors, Inc.*, 382 F.Supp. 1373, 1379 (D.N.M.1974); *Black v. Sheraton Corp. of Am.*, 371 F.Supp. 97, 100 (D.D.C.1974); *Simons–Eastern Co. v. United States*, 55 F.R.D. 88, 88–89 (N.D.Ga. 1972).

A document must meet two requirements for the deliberative process privilege to apply. First, it must have been generated before the adoption of an agency's policy or decision. In other words, it must be pre-decisional. *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980). Second, the document must be deliberative in nature, containing opinions,

recommendations, or advice about agency policies. *Ibid.* Purely factual material that does not reflect deliberative processes is not protected. *Environmental Protection Agency v. Mink*, 410 *U.S.* 73, 88, 93 *S.Ct.* 827, 837, 35 *L.Ed.*2d 119, 132 (1973), *superseded by statute on other grounds noted by, Zweibon v. Mitchell*, 516 *F.*2d 594, 642 (D.C.Cir.1975). Once the government demonstrates that the subject materials meet those threshold requirements, the privilege comes into play. In such circumstances, the government's interest in candor is the "preponderating policy" and, prior to considering specific questions of application, the balance is said to have been struck in favor of non-disclosure. *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss*, 40 *F.R.D.* 318, 324 (D.D.C.1966); *Sprague Elec. Co. v. United States*, 81 *Cust.Ct.* 168, 462 *F.Supp.* 966, 974 (1978).

Despite the existence of the privilege, with its concomitant presumption against disclosure, a litigant may obtain deliberative process materials if his or her need for the materials and the need for accurate fact-finding override the government's significant interest in non-disclosure. *Warner, supra*, 742 *F.*2d at 1161. As with any privilege, the party seeking such documents bears the burden of showing a substantial or compelling need for them. *Deuterium Corp. v. United States*, 4 *Cl.Ct.* 361, 364 (1984) (requiring compelling need); *Scott, supra*, 142 *F.R.D.* at 293 (same); *Burka, supra*, 110 *F.R.D.* at 663 (requiring substantial need).[2] "[I]n all but exceptional cases it is considered against the public interest to compel the government to produce inter-agency advisory opinions." *E.W. Bliss Co. v. United States*, 203 *F.Supp.* 175, 176 (N.D.Ohio 1961).

Under the federal cases, when determining whether a litigant has sustained the burden of overcoming the deliberative process privilege, factors to consider include: 1) the relevance of the

---

[2] Some cases articulate that need as a particularized one. *Farley, supra,* 11 *F.3d* at 1389; *Ferrell v. United States Dep't of Housing and Urban Dev.,* 177 *F.R.D.* 425, 429 (N.D.Ill.1998).

evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Warner, supra*, 742 *F*.2d at 1161.

## IV.

█ The Commissioner argues that we declared the existence of the deliberative process privilege in New Jersey in *McClain, supra*, 99 *N.J.* 346, 492 *A*.2d 991, and that that privilege is applicable here. In *McClain*, the plaintiff sought disclosure of documents relating to the State Board of Medical Examiners' investigation of a string of deaths that occurred at the New Jersey College of Medicine and Dentistry and College Hospital. *Id.* at 351, 492 *A*.2d 991. The plaintiff planned to use the Board's investigatory documents in a separate civil proceeding against a separate entity, the College Hospital. *Ibid.*

In *McClain*, we identified the considerations underlying the deliberative process privilege as declared in federal statutory and decisional law:

> A full and free exchange of discourse would be hampered if the preliminary thought processes of agency members were bared. Again, this exemption has not been regarded as all-exclusive, and saying that the document is an intra-agency memorandum does not make it so.
>
> In *Environmental Protection Agency v. Mink, supra*, 410 *U.S.* 73, 93 *S.Ct.* 827, 35 *L.Ed.*2d 119, the leading case construing the FOIA's [3] exemption for interagency or intra-agency memoranda, the Supreme Court distilled a commonsense, flexible rule from the legislative history and judicial opinions dealing with the privilege of executive agencies to withhold information from their adversaries, holding that the exemption authorized an agency to withhold materials reflecting deliberative or policy-making processes but required disclosure of purely factual, investigative matters.
>
> [*Id.* at 360, 492 *A*.2d 991 (quotations omitted).]

Despite that important policy, in *McClain* we cautioned against "wooden" application of the notion of confidentiality. We stated that merely characterizing a document as deliberative is not

---

[3] Freedom of Information Act, 5 *U.S.C.A.* § 552.

dispositive and that withholding discoverable factual material by placing it in a deliberative document should not be countenanced. *Id.* at 360–61, 492 *A.*2d 991.

We determined,

that the initial focus must be upon the nature of the materials sought. The balancing process must be concretely focused upon the relative interests of the parties in relation to these specific materials. There is a qualitative difference in the nature of information that an investigative agency acquires. Useful guidelines for the determination of this balancing were stated by the California Supreme Court:

Implicit in each assessment is a consideration of consequences-i.e., the consequences to the litigant of non-disclosure, and the consequences to the public of disclosure. The consideration of consequences to the litigant will involve matters . . . including the importance of the material sought to the fair presentation of the litigant's case, the availability of the material to the litigant by other means, and the effectiveness and relative difficulty of such other means. The consideration of the consequences of disclosure to the public will involve matters relative to the effect of disclosure upon the integrity of public processes and procedures.

This standard is . . . flexible and adaptable to different circumstances and sensitive to the fact that the requirements of confidentiality are greater in some situations than in others. The process has been described as calling for an exquisite weighing process by the trial judge. As the considerations justifying confidentiality become less relevant, a party asserting a need for the materials will have a lesser burden in showing justification. If the reasons for maintaining confidentiality do not apply at all in a given situation, or apply only to an insignificant degree, the party seeking disclosure should not be required to demonstrate a compelling need.

[*Id.* at 361–62, 492 *A.*2d 991 (citations and quotations omitted).]

Finally, we concluded that the Board's internal memorandum was

entitled to a high degree of protection on two grounds. First, it is an intra-agency memorandum, entitled to confidentiality, and second, it also presumably contains matters of opinion in the committee's investigation that may or may not have been acted upon by the agency in its final deliberation and conclusion. Again, we would expect that the Court would apply the *Mink* rationale to determine whether any of its contents is strictly factual and would conclude that such information would be reasonably available to the plaintiff, excising matters of opinion or conjecture on the part of the agency members. Whether the need for its conclusory contents is so compelling and the prejudice so great due to their unavailability, will be for the trial court to decide. We note that this is not the final action of the Board and, as such, is entitled to a high degree of confidentiality.

[*Id.* at 363, 492 *A.*2d 991.]

To be sure, *McClain* never overtly declares the existence of a deliberative process privilege in those terms. However, it is crystal clear regarding the "high degree of protection" accorded to the government's pre-decisional deliberative documents containing advice, opinions, or recommendations. *Ibid.* Such documents, according to *McClain,* are confidential and require the party seeking discovery to show a "compelling" need to justify disclosure. *Id.* at 362, 492 *A.*2d 991. That is the same standard adopted in the federal cases that have explicitly recognized the privilege. *Deuterium, supra,* 4 *Cl.Ct.* at 364; *Scott, supra,* 142 *F.R.D.* at 293. We are satisfied that the intent of *McClain* was to establish a qualified privilege for governmental deliberative process materials because the government, like its citizens, "needs open but protected channels for the kind of plain talk that is essential to the quality of its functioning." *Carl Zeiss Stiftung, supra,* 40 *F.R.D.* at 325. Although we have not had occasion to set out the exact contours of the privilege, certain procedural aspects of it are evident from *McClain.*

The initial burden falls on the state agency to show that the documents it seeks to shield are pre-decisional and deliberative in nature (containing opinions, recommendations, or advice about agency policies). Once the deliberative nature of the documents is established, there is a presumption against disclosure. The burden then falls on the party seeking discovery to show that his or her compelling or substantial need for the materials overrides the government's interest in non-disclosure. Among the considerations are the importance of the evidence to the movant, its availability from other sources, and the effect of disclosure on frank and independent discussion of contemplated government policies. *McClain, supra,* 99 *N.J.* at 361–62, 492 *A.*2d 991.

## V.

Unfortunately, the existence of a deliberative process privilege is not dispositive of the issue before us. Because the privilege exists to protect the processes pursuant to which govern-

ment agency decisions are made, it is inapplicable if the individual asserting it is not performing a governmental function.

*N.J.S.A.* 17:30C–1 to –31 is based on the ULA. Pursuant to that Act, the Legislature has given the Commissioner the exclusive role as receiver of an insurer. That role includes the institution of liquidation or rehabilitation proceedings with court supervision. *N.J.S.A.* 17:30C–15. Upon appointment of the Commissioner as rehabilitator or liquidator, the Commissioner must take possession and control of the insurer's property and business and, in doing so, may deal with the insurer's property and business in her own name. *N.J.S.A.* 17:30C–7, –9. All claims against the insolvent insurer are to be filed with the Commissioner. *N.J.S.A.* 17:30C–20. Unlike the day-to-day functions of the Department of Insurance that are carried out by regular public employees, the Commissioner, as liquidator, is permitted to hire specially "such counsel, clerks, and assistants as he deems necessary" to aid in carrying out the demands of the position of liquidator. *N.J.S.A.* 17:30C–17.

Several of the states that adopted the ULA have recognized that a state insurance commissioner is not acting as a government regulator when serving in the capacity of liquidator. For example, in *Crawford v. Employers Reins. Co.*, 896 *F.Supp.* 1101, 1102 (W.D.Okla.1995), after reinsurers removed the insurance commissioner's suit against them to federal district court, the court rejected the commissioner's argument that the case should be remanded back to state court because the commissioner was the "alter ego" of the state for purposes of determining federal jurisdiction. The court noted that the commissioner initiated action to enforce a contract against the defendant reinsurers in his capacity as a receiver for the insolvent company, and not as a state official asserting state interests. *Ibid.* Similarly, in *In re Liquidation of Ideal Mut. Ins. Co.*, 140 *A.D.*2d 62, 532 *N.Y.S.*2d 371, 374 (1988), the court noted that "[w]hen acting as statutory liquidator of an insolvent insurer, the Superintendent [of Insurance] is essentially a court-appointed private trustee who for all

practical purposes takes the place of the insolvent insurer and stands in its shoes." Therefore, the court held that "[t]he Superintendent as Liquidator of an insurance company, does therefore, occupy a legal personality separate and distinct from the Superintendent of Insurance as a public official charged with regulating the insurance industry generally." *Ibid.*

However, some out-of-state cases also hold to the contrary. In *El Paso Elec. Co. v. Texas Dep't of Ins.*, 937 *S.W.*2d 432, 436 (Tex.1996), the court stated that it "disagree[s] that the receiver for an insolvent insurer serves merely as a 'private trustee.' To the contrary, the receiver principally performs a public, regulatory function." *Ibid.* The court concluded that

> [t]he purpose of establishing a system of liquidation through the state is to prevent the waste of assets which had previously been occasioned through receiverships. The commissioner as liquidator of an insolvent insurance company is a state officer performing duties enjoined upon him by the state and in their performance he acts in behalf of the state.
>
> [*Ibid.*]

In *State v. Preferred Accident Ins. Co. of New York*, 238 *La.* 372, 115 *So.*2d 384, 385 (1959), the insurance commissioner was appointed receiver for an insurance company that was placed in liquidation, and judgment was entered against the commissioner as receiver in liquidation proceedings involving claims against the insurance company. The court held that the proceedings were against the commissioner as a state official and, therefore, no appeal bond was required to be furnished by the commissioner. *Id.* at 386.

In our view, neither of those positions is completely correct. Certainly, the Commissioner as liquidator is functioning, at least in part, in a private role. Indeed, prior to the ULA, the role of liquidator was filled by a private citizen. Moreover, the Commissioner's fiduciary responsibility is to the creditors of the insolvent insurer, not to the public at large. At the same time, it is clear that "the insurance business affects the public interest and is therefore subject to reasonable regulation, *including liquidation proceedings of an insolvent carrier.*" *In re Liquidation*

*Integrity Ins. Co.,* 240 *N.J.Super.* 480, 490, 573 *A.*2d 928 (App.Div. 1990) (emphasis added). In other words, the Commissioner functions in a hybrid status, part public and part private, when he or she oversees the liquidation of an insolvent insurer.

Because of that hybrid role and because of the general disfavor with which we view impediments to the truth seeking process, *Dixon v. Rutgers, the State Univ. of New Jersey,* 110 *N.J.* 432, 447, 541 *A.*2d 1046 (1988), we do not believe the invocation of the deliberative process privilege should be countenanced in this context. Indeed, in *McClain* we stated: "If the reasons for maintaining confidentiality do not apply at all in a given situation, or apply only to an insignificant degree, the party seeking disclosure should not be required to demonstrate a compelling need." *McClain, supra,* 99 *N.J.* at 362, 492 *A.*2d 991. That is the case here. As we have held, when new privileges are recognized, it is only in a setting in which a purely private interest in disclosure is outweighed by a strong, purely public interest in confidentiality. *Payton, supra,* 148 *N.J.* at 541, 691 *A.*2d 321. A purely public interest does not exist when the Commissioner functions as the liquidator of an insolvent insurer.

That is not to suggest that this is just like an ordinary discovery issue between private citizens in which all relevant evidence is presumed to be discoverable. Just as the Commissioner's hybrid status eliminates the presumption against discovery embedded in the privilege, it also negates the presumption in favor of discovery that would exist in a case in which no public interest in confidentiality is implicated. Simply because we have declared the privilege to be inapplicable "should not be read to imply that we regard the [Commissioner's] confidentiality interest as insignificant." *Dixon, supra,* 110 *N.J.* at 454, 541 *A.*2d 1046. The rejection of the privilege in this context and the protection of the integrity of the Commissioner's agency decisions are not inconsistent. "Trial courts may guarantee to [reinsurers] the discovery of materials needed to support [their case], while at the same time ensuring that the manner and scope of discovery minimizes intru-

sion into the confidentiality" of the deliberative processes involved in forming a liquidation plan. *Ibid.* Indeed, we are certain that the Commissioner's confidentiality interests will be "amply accommodated by the exquisite weighing process that our courts regularly undertake when determining whether to order disclosure of sensitive documents in a variety of contexts." *Payton, supra,* 148 *N.J.* at 545, 691 *A.*2d 321 (internal quotations and citations omitted).

 In sum, the only *sui generis* aspect of a hybrid case like this one, in terms of the discovery of deliberative process materials, is that no presumption is deemed to flow in either direction. Neither discovery nor confidentiality will be presumed. The State must establish the deliberative nature of the documents and, thereafter, each side will advance its claims (the State for confidentiality and the reinsurers for discovery). The trial court must then engage, after an *in camera* review of the documents, in the balancing process that is often required to determine whether, and under what circumstances, disclosure of sensitive documents should be ordered. In striking the balance the court is free to adopt any of the whole range of available discovery limiting tools, including protective orders, sealing, and redaction to name a few. *Payton, supra,* 148 *N.J.* at 542, 691 *A.*2d 321. In our view, a flexible common sense application of our rules of discovery is the best and fairest means of accommodating Munich's interest in opposing the FDP and the Commissioner's interest in the integrity of agency decisions.

## VI.

 Finally, we clarify that the deliberative process privilege and *N.J.R.E.* 515 are not interchangeable. *See McClain, supra,* 99 *N.J.* at 353, 360–61, 492 *A.*2d 991 (discussing the deliberative process and official information privileges). *N.J.R.E.* 515 provides that

[n]o person shall disclose official information of this State or of the United States (a) if the disclosure is forbidden by or pursuant to any Act of Congress or of this

State, or (b) if the judge finds that disclosure of the information in the action will
be harmful to the interests of the public.

The term "official information" is not defined. However, a prior
version of *N.J.R.E.* 515 defined the term to include "information
not open or theretofore officially disclosed to the public relating to
internal affairs of the State . . . in the course of duty, or transmit-
ted from one such official to another in the course of his duty."
Biunno, *N.J. Rules of Evidence,* comment 1 on *N.J.R.E.* 515
(1999).

 "Dean Wigmore has noted that some official information
privilege undoubtedly exists, but adds that the scope of that
privilege has not yet been defined with certainty." *Ibid.* (citing 8
*Wigmore on Evidence* § 2387 at 792 (McNaughton rev.1961)).
For instance, information such as the precise location of the site
where a wiretap interception was made is the type of information
that is entitled to protection. *State v. Travis,* 133 *N.J.Super.* 326,
332, 336 *A.*2d 489 (App.Div.1975). Also encompassed within the
concept is the exact location of a vantage point from which
surveillance of criminal activity was made by law enforcement
officers. *State v. Garcia,* 131 *N.J.* 67, 73–74, 618 *A.*2d 326 (1993);
*State v. Zenquis,* 131 *N.J.* 84, 88, 618 *A.*2d 335 (1993). The basic
difference between *N.J.R.E.* 515 and the deliberative process
privilege is that the former protects facts from disclosure whereas
the latter protects opinions.

 Although the Commissioner has not invoked *N.J.R.E.* 515,
in the event that she does so her hybrid status as liquidator will
inform the inquiry. Because the Commissioner as liquidator is
not acting completely as a government official, the information
pertaining to the FDP and liquidation proceedings is not technical-
ly "official information" of the State. Hence, the Commissioner
may not claim the insulation of liquidation related facts by simply
invoking *N.J.R.E.* 515. As in the case of the deliberative process
privilege, if the Commissioner seeks the protection of *N.J.R.E.* 515
the reinsurers may counter with the need for disclosure and the
trial court will simply balance those interests.

## VII.

The approach we adopt for use in this context is a flexible one. Protection may be afforded to both facts and deliberative processes without strict reference to the classification of the materials. Both types of information may be entitled to protection depending on the outcome of the balancing between the need for confidentiality and the need for disclosure. That approach will allow the court to consider and accommodate the variety of opposing interests that exist when discovery of confidential materials is sought.

## VIII.

We affirm the judgment of the Appellate Division ordering remand and direct that the Law Division undertake proceedings consistent with this opinion.

*For affirmance in part, reversal in part*—Chief Justice PORITZ, and Justices O'HERN, STEIN, COLEMAN, LONG, VERNIERO and LaVECCHIA—6.

*Opposed*—None.