**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0039-18T3

JAMES R. FREESWICK,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

WAYNE TOWNSHIP BOARD
OF EDUCATION, WAYNE
TOWNSHIP PUBLIC SCHOOL
DISTRICT, and MICHAEL J.
DONOW, in his official capacity
as Interim Business Administrator
and Custodian of Records of
Wayne Township Board of
Education and Wayne Township
Public School District,

      Defendants-Respondents/
      Cross-Appellants.

_____

Argued October 15, 2019 – Decided January 13, 2020

Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2506-17.

James R. Freeswick, appellant/cross-respondent, argued the cause pro se.

John G. Geppert argued the cause for respondents/ cross-appellants (Scarinci & Hollenbeck, LLC, attorneys; John G. Geppert, of counsel and on the briefs; Laura M. Miller, on the briefs).

PER CURIAM

This appeal and cross-appeal stem from a well-publicized incident in November 2016 regarding the reinstated eligibility of two transfer student-athletes with the Wayne Hills High School (WHHS) sectional state champion football team. Following the conclusion of the football season, defendant Wayne Township Board of Education (the Board) retained special counsel to advise the Board regarding possible changes to its policies and procedures on residency and eligibility requirements for student-athletes transferring to defendant Wayne Township Public School District (the District).

In the following spring and summer, plaintiff James R. Freeswick made two requests under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, to defendant Michael J. Donow, Interim Business Administrator and Custodian of Records for the Board, seeking release of documents related to special counsel's investigation.

Pertinent to this appeal, plaintiff sought copies of special counsel's: (1) unredacted itemized legal bill; (2) typewritten summaries of interviews with Board Superintendent Dr. Mark Toback, WHHS principal Dr. Maureen Weir, and two unidentified school district witnesses; and (3) a single page of handwritten notes taken during the interview of an unidentified person from Wayne Valley High School (WVHS), another high school in the district. The trial judge ordered defendants to provide plaintiff unredacted copies of the itemized legal bills and Dr. Weir's interview summary. The remaining documents were determined to be protected from disclosure under the deliberative process privilege.

On appeal, plaintiff contends, under OPRA and the common law right of access to public records, he is entitled to unredacted copies of the interview summaries and handwritten notes. On cross-appeal, defendants contend the judge erred in ordering the release of redacted interview summaries of Dr. Toback, Dr. Weir, and the two Board employees and redacted itemized legal bills of special counsel. We affirm in part, reverse and remand in part.

I.

On November 7, 2016, Dr. Toback sought guidance from the New Jersey State Interscholastic Athletic Association (NJSIAA) about the possibility that

A-0039-18T3

two student-athletes on the WHHS football team, who transferred to the school and played that fall, were ineligible to play because they had not established bona fide residence in the District. After meeting with Dr. Toback and other WHHS administrators the following day, the NJSIAA determined the students were in fact ineligible to play because they did not have a bona fide change of address, and, thus, WHHS was disqualified from the 2016 state football playoffs.

On November 8, the Board and parents of WHHS students filed an emergent application with the New Jersey Commissioner of Education. On November 10, the Acting Commissioner issued a decision overturning the NJSIAA's decision barring WHHS from competing in the state football playoffs. The Acting Commissioner determined the NJSIAA did not conduct an eligibility hearing for the student-athletes, thereby denying them due process.

At the ensuing eligibility hearing on November 15, based upon new information presented, the NJSIAA held the student-athletes were eligible to play, and WHHS was able to participate in the state football playoffs. With the green light to compete, the WHHS football team won a sectional state championship against its intra-school district rival, WVHS.

4

The eligibility controversy continued to fester when irate members of the Wayne Township community – including plaintiff – voiced concerns and complaints at the Board's November 17 meeting. As a result, on December 21, the Board retained DiFrancesco, Bateman, Kunzman, Davis, Leher & Flaum, PC, "at an hourly rate of $150/hour not to exceed 50 hours/$7,000" as special counsel, to investigate "all events related to [the residency incident] as well as [conduct] an audit of the district's processes used to verify student residency and procedures followed to verify athletic transfer into the district."

On June 5, 2017, approximately two weeks before special counsel's investigation concluded, plaintiff submitted an OPRA request to Donow. Plaintiff requested the following:

> (1) Copies of all reports, including all addenda and appendices to all reports and copies of all documents referenced in all reports, by the special outside counsel, Philip J. Stern, Esq.[,] of the [DiFrancesco law firm], and any other lawyer or lawyers of that firm, in connection with the investigations requested by [the Board] in or about December[] 2016 of (a) the events surrounding the Wayne Hills High School varsity football team being temporarily disqualified from participation [in] the state football playoffs in 2016 by the [NJSIAA] and (b) the policy of [the District] regarding residency of students in [the District], and
>
> (2) Copies of all contracts a/k/a retainer agreements between [the District] and [the DiFrancesco law firm], in connection with the hiring of that law firm by [the

District] to conduct the investigations requested by [the Board] referenced in Part II, item (1) above, and

(3) Copies of all invoices and bills submitted to [the District] by [the DiFrancesco law firm], in connection with the hiring of that law firm by [the District] to conduct the investigations requested by [the District] to conduct the investigations requested by [the Board] referenced in Part II, item (1) above.

On June 13, Donow responded to the request. He informed plaintiff the District was not in possession of any reports requested in item one but provided copies of: (1) special counsel's legal bills with redactions of the interviewees' names and information "considered protected under attorney-client privilege, as well as information which is considered advisory, consultative, or deliberative material[;]" and (2) minutes of the December 21 Board meeting approving special counsel's investigation.

Two days later, with the investigation concluded, Stern gave an oral report to the Board at its public meeting. Stern stated that during the investigation, a total of eight individuals "includ[ing] staff members, building level administration, central office administrators," and Dr. Toback, were interviewed. He advised the Board it needed to "update and institutionalize" its process for handling residency transfers and provided new procedures drafted for its consideration to address transfers. He further explained that, at all times,

6

Dr. Toback "acted in the best interest of the school district" and "within his authority as the chief school administrator." Stern recommended the Board and its administration, among other things, "commit to improving the internal residency procedures"; procure a "centralized administrative overview of all transfers into the district"; conduct "additional overview for all transfers" seeking to participate in sports related activities; and "implement[] measures to ensure that students and student athletes participate in a healthy school community . . . ." Stern neither disclosed the names of interviewees, nor the content of their interviews.

Plaintiff filed a second, more expansive, OPRA request with the District on July 3, 2017. He requested:

> (1) Resolution S-2017-19, approved by [the Board] at its meeting held on November 17, 2016, and
>
> (2) List of the dates of all executive sessions of [the Board] that were held on or about September 8, 2016 through July 3, 2017, and
>
> (3) Minutes of all executive sessions of [the Board] that were held on or about September 8, 2016 through July 3, 2017, and
>
> (4) Minutes of all special and regular meetings of [the Board] that were held on or about April 5, 2017 through June 15, 2017, and

(5) List of dates of all executive sessions of [the Board] at which the investigation and/or a report of the special investigator and outside counsel [Stern] was a topic addressed and/or discussed, and

(6) Minutes of all executive sessions of [the Board] at which the investigation and/or report of the special investigator and outside counsel [Stern] was a topic addressed and/or discussed, and

(7) Copy of the final report by special investigator and outside counsel, [Stern], of [the DiFrancesco law firm], to [the Board] regarding his investigation that was requested by [the Board] on or about December 21, 2016, and copies of all documents attached to, and/or referenced in, the final report, and

(8) List of the names, addresses and, if an employee of [the District], job title, of all persons who were interviewed by special investigator and outside counsel [Stern], and/or by any member or associate of [the DiFrancesco law firm], including Robert Manetta, Esq., in connection with the investigation and report that was requested by [the Board] on or about December 21, 2016, and, with respect to each such person, the date, time and place that such person was interviewed and the name and title of the person who conducted the interview, and

(9) List of names. addresses and, if an employee of [the District], job title, of all persons who gave statements to the special investigator and outside counsel, [Stern], and/or to a member or associate of [the DiFrancesco law firm], including associate attorney [Manetta], in connection the investigation and report that was requested by [the Board] on or about December 21, 2016, and, with respect to each statement, (a) the date,

A-0039-18T3

time and place that such statement was made and, if in writing, (b) copies of all such statements, and

(10) List of all documents, records and information, by title, author, date and subject matter, that have been submitted by [the District], including employees thereof, and/or by [the Board], including employees thereof, to the special investigator and [Stern] and/or to [the DiFrancesco law firm], including associate attorney [Manetta], in connection with the investigation and report that was requested by [the Board] on or about December 21, 2016, and all copies of all such documents, and

(11) List of all documents, records and information, by title, author, date and subject matter that were submitted to [the Board] and/or [the District], by the special investigator and outside counsel [Stern] and/or by [the DiFrancesco law firm], including associate attorney [Manetta], in connection with the investigation and report that was requested by [the Board] on or about December 21, 2016, and all copies of all such documents, and

(12) List of all emails and all other correspondence, identified by sender, recipient, date and subject matter, which were sent by [the Board], or a member thereof, and/or by [the District], or an employee thereof, to [the] special investigator and outside counsel [Stern] and/or to a member or associate attorney in [the DiFrancesco law firm], including [Manetta]. in connection with the investigation and report that was requested by [the Board] on or about December 21, 2016, and all copies of all such emails and correspondence, and

(13) List of all emails and all other correspondence, identified by sender, recipient, date and subject matter, which were sent by [the] special investigator and

outside counsel [Stern] and/or by a member or associate of [the DiFrancesco law firm], including [Manetta], to [the Board], or a member thereof, and/or to [the District], or an employee thereof, in connection with the investigation and report that was requested by [the Board] on or about December 21, 2016, and all copies of all such emails and correspondence, and

(14) Copies of all invoices and bills submitted by [the DiFrancesco law firm] to [the Board] and/or [the District] subsequent to May 31, 2017 in connection with the investigation and report requested by [the Board] on or about December 21, 2016.

In a letter dated July 12, Donow advised plaintiff the documents sought in request numbers 1, 2, 3, 4, 5, and 6 were available on the District's website. Because of the volume of additional documents sought, Donow indicated they would be provided to plaintiff "on or before August 11."

Two weeks later, plaintiff filed an Order to Show Cause and verified complaint seeking unredacted versions of the legal bills and invoices. On August 17, pursuant to Rule 4:67-1(a), the trial judge entered the order requiring defendants to show cause on September 28, as to why plaintiff was not entitled to unredacted copies of the requested documents.

In the meantime, the parties continued to communicate in an effort to resolve their differences. However, as they were unsuccessful, defendants

10

eventually submitted the disputed documents to the judge for in camera inspection.

On October 2, plaintiff filed an amended verified complaint contesting the Board's denial of item number nine from his July 3, 2017 OPRA request. The judge ordered a return date of November 14.

On November 13, in response to the order, defendants provided the judge for in camera review four sets of unredacted typewritten notes by special counsel summarizing the interviews of Dr. Toback, Dr. Weir, and two other Board employees. Also provided was a single page of handwritten notes by Stern regarding his "mental impressions" of his interview of the unidentified person from WVHS, as well as special counsel's unredacted invoices for legal bills.

Following three hearings dates in September, November, and December, as well as three telephone conferences in February, June, and August of 2018, which included some rulings, the judge entered an order of final judgment on August 3, 2018, requiring defendants to turn over to plaintiff: (1) unredacted copies of special counsel's itemized legal bills dated February 13, 2017, March 7, 2017, April 10, 2017, and May 31, 2107; and (2) an unredacted copy of

typewritten notes of the interview of Dr. Weir.[1]  Additionally, the order denied

plaintiff's request to obtain: (1) unredacted copies of typewritten notes of

interviews of Dr. Toback, and two other Board employees; and (2) an unredacted

copy of Stern's single-page handwritten notes of the interview of "the person 'of

[WVHS].'" The order also awarded costs to plaintiff.

Plaintiff appealed and defendants' cross-appealed.  The parties thereafter

agreed to a consent order executed by the judge staying all provisions of the

August 8 final judgment requiring the disclosure of documents and the award of

costs to plaintiff.

## II.

We review de novo a trial judge's legal conclusions concerning access to

public records under OPRA and the common law right of access.  N. Jersey

Media Grp., Inc. v. Township of Lyndhurst, 441 N.J. Super. 70, 89 (App. Div.

2015).  We will not disturb factual findings as long as they are supported by

adequate, substantial and credible evidence.  See Meshinsky v. Nichols Yacht

Sales, Inc., 110 N.J. 464, 475 (1988).  "We apply a different and deferential

---

[1]  The order suggests in paragraph 1(a) and (b) that there were two sets of "typewritten notes of the interview of Dr. Weir," however, the record indicates Dr. Weir was interviewed only once for which there is only one five-page typewritten summary.

A-0039-18T3

standard of review when a court conducts an in camera review of documents and balances competing interests in disclosure and confidentiality in connection with a common-law-based request to inspect public records." N. Jersey Media Grp., Inc., 441 N.J. Super. at 89 (citing Shuttleworth v. City of Camden, 258 N.J. Super. 573, 588 (App. Div.)). Nevertheless, "to the extent [the appellate court] can be said to be reviewing essentially a legal determination, [it] can review the documents which the trial judge ordered disclosed . . . ." Id. at 90 (quoting Shuttleworth, 258 N.J. Super. at 588).

The following principles governing OPRA and the common law right to access to government records are relevant to the present dispute.

A.

OPRA

"OPRA provides for ready access to government records by the citizens of this State." Burnett v. Cty. of Bergen, 198 N.J. 408, 421-22 (2009) (citing Mason v. City of Hoboken, 196 N.J. 51, 64-5 (2008)). "The purpose of OPRA 'is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535 (2005) (quoting Asbury Park Press v. Ocean Cty. Prosecutor's Office,

374 N.J. Super. 312, 329 (Law Div. 2004)). Accordingly, OPRA directs that "all government records shall be subject to public access unless exempt," and "any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1.

Although OPRA broadly defines the term "government record," it expressly provides it "shall not include inter-agency or intra-agency advisory, consultative, or deliberative material." N.J.S.A. 47:1A-1.1. "This exemption has been construed to encompass the deliberative process privilege, which has its roots in the common law." Ciesla v. N.J. Dep't of Health & Sr. Servs., 429 N.J. Super. 127, 137 (App. Div. 2012) (citing Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 284 (2009)). The deliberative process privilege allows government entities to "withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which [its] decisions and policies are formulated." In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 83 (2000) ("Integrity") (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)). "[T]he privilege is necessary to ensure free and uninhibited communication within governmental agencies so that the best possible decisions can be reached[.]" Educ. Law Ctr., 198 N.J. at 286. "The privilege bars the 'disclosure of proposed policies before they have been fully

14

vetted and adopted by a government agency,' thereby ensuring that an agency is not judged by a policy that was merely considered." Ciesla, 429 N.J. Super. at 137-38 (quoting Educ. Law Ctr., 198 N.J. at 286).

"In order to invoke the deliberative process privilege, an agency must initially prove that a document is 'pre-decisional,' i.e., 'generated before the adoption of an agency's policy or decision,' and also 'deliberative,' in that it 'contain[s] opinions, recommendations or advice about agency policies.'" Id. at 138 (alteration in original) (quoting Integrity, 165 N.J. at 84-85). "As with any privilege, the party seeking such documents bears the burden of showing a substantial or compelling need for them." Integrity, 165 N.J. at 85 (citations omitted).

"Documents that satisfy the OPRA definition of government record are not subject to public access if they fall within the work-product doctrine." O'Boyle v. Borough of Longport, 218 N.J. 168, 188 (2014) (citing Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531 542 (2012); Gannett N.J. Partners, L.P. v. Cty. of Middlesex, 379 N.J. Super. 205, 218 (App. Div. 2005)).

OPRA also exempts "any record within the attorney-client privilege . . .; [and] security measures and surveillance techniques which, if disclosed, would create a risk to the safety of persons, property, electronic data or software . . .

A-0039-18T3

[.]" N.J.S.A. 47:1A-1.1. "[T]he attorney-client privilege applies whenever confidential legal advice is rendered to state agencies, whether by private counsel . . . or by the Division [of Law] . . . ." Paff v. Div. of Law, 412 N.J. Super. 140, 154 (App. Div. 2010). The purpose of the attorney-client privilege is "to encourage clients to make full disclosure to their attorneys." Id. at 150 (quoting Macey v. Rollins Envtl. Servs. (N.J.), Inc., 179 N.J. Super. 535, 539 (App. Div. 1981)). The attorney-client privilege is "ordinarily waived when a confidential communication between an attorney and a client is revealed to a third party." O'Boyle, 218 N.J. at 186 (citation omitted). While records that are "within the attorney-client privilege" are confidential, OPRA explicitly precludes from exemption "attorney or consultant bills or invoices[,]" although such records "may be redacted to remove any information protected by the attorney-client privilege." N.J.S.A. 47:1A-1.1.; see also O'Boyle, 218 N.J. at 184-85) (holding "a document by a third party, such as a bill for services prepared by an attorney retained by a public entity and submitted to it for payment, is subject to public access pursuant to OPRA").

## B.

## Common Law

A common law right of access to public records exists parallel and unrestricted by OPRA. See Mason, 196 N.J. at 67. Under common law, to constitute a public record, three elements must be met: (1) the document be a written memorial; (2) the document be made by a public officer; and (3) the officer be authorized by law to make it. Bergen Cty. Imp. Auth. v. N. Jersey. Media Grp., Inc., 370 N.J. Super. 504, 518 (App. Div. 2004).

The common law right to access, however, is not absolute. Keddie v. Rutgers, 148 N.J. 36, 50 (1997). To gain access to materials under the common law right of access: "(1) 'the person seeking access must establish an interest in the subject matter of the material'; and (2) 'the citizen's right to access must be balanced against the State's interest in preventing disclosure.'" Mason, 196 N.J. at 67 (quoting Keddie, 148 N.J. at 50). And a "citizen's right to access 'must be balanced against the State's interest in preventing disclosure.'" Ibid. (quoting Higg-A-Rella, Inc. v. Cty. of Essex, 141 N.J. 35, 46 (1995).

## III.

Guided by the principles set forth above, we address the parties' respective contentions in their appeal and cross-appeal.

17

A.

Interview Summaries

In his appeal, plaintiff argues the judge erred in denying his request for unredacted typewritten notes of interview summaries of Dr. Toback and two unidentified interviewees. Defendants contend in their cross-appeal the judge erred in ordering the release of any of interview summaries and providing costs to plaintiff.[2]

Based on our review of the interview summaries of Dr. Toback and the two unidentified Board employees, we agree with the judge that the summaries should not be released due to the deliberative process privilege under OPRA because "they [were] consultative and deliberative about a new [residency] policy[,] . . . two of them don't mention [the student-residency investigation] at all . . . [the] other one mentions [the student-residency issue] but only as an

---

[2]  Although identified in their notice of cross-appeal, defendant's do not brief the trial judge's award of costs, thus we deem the issue abandoned. See Pressler & Verniero, Current N.J. Court Rules, comment 5 on R. 2:6-2 (2019); see also Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 318-19 (App. Div. 2017).

example of why we need to improve [the District's policy]. It doesn't go into any detail about the [the student-residency] investigation."

The interviewees' comments were not purely factual and were made to special counsel to aid in the formulation of residency policies for the Board's consideration. See Integrity, 165 N.J. at 80, 83. They revealed their experiences with the district's student residency policies and procedures with no mention of the student-athletes' transfer incident. To allow disclosure would curb the flow of complete and uninhibited communication that is needed to develop sound governance policy. See Educ. Law Ctr., 198 N.J. at 286. Contrary to plaintiff's argument, the Board did not waive any privilege when Stern delivered his oral report at the public Board meeting, because other than identifying Dr. Toback, no one else was identified and there was no mention of what any interviewee revealed. As for defendants' claim the interview summaries are protected by the work product doctrine, this is to no avail because the summaries were not completed in anticipation of litigation. R. 4:10-2(c).

We recognize the summaries of Dr. Toback and Dr. Weir's interviews, appear to mix deliberation with pure facts. We therefore look to Educ. Law Ctr., where the Court held:

> [A] record, which contains or involves factual
> components, is subject to the deliberative process

privilege when it was used in the decision-making process and its disclosure would reveal the nature of the deliberations that occurred during that process. By that standard, individual documents may not be capable of being determined to be, necessarily, deliberative material, or not, standing alone. A court must assess such fact-based documents against the backdrop of an agency's deliberative efforts in order to determine a document's nexus to that process, and its capacity to expose the agency's deliberative thought-processes.

[198 N.J. at 299-300.]

Dr. Toback's interview summary reveals facts referencing the residency incident solely as an example, and was a brief and fleeting mention. The remainder of the document expresses Dr. Toback's opinions regarding the District's student residency policy and his recommendations for updating the policy. Thus, we discern no reason to overturn the judge's decision with respect to this interview summary because plaintiff does not provide any substantial or compelling need for the same reasons noted above.

As for the interview summary of Dr. Weir, we part company with a portion of the judge's ruling. For the most part, the summary is not protected because it details the facts as Dr Weir knew them concerning the student-athletes' residency incident and does not discuss the Board's residency policy and procedures. However, at the end of the summary are sections titled "Dr. Weir's Recommendations on Procedure" and "Dr. Weir's Recommendations on other

people to interview"; these are deliberative and should be redacted. Further, releasing the names of the individuals Dr. Weir recommended the DiFrancesco firm to interview would hinder future "independent discussion regarding contemplated policies and decisions." Integrity, 165 N.J. at 85-86.

Turning to the common law right of access, we see no cause to differ from the conclusions reached under OPRA. It is clear the interview summaries are public records because they are memorialized documents created at the behest of a public body. However, plaintiff has not shown his interest in disclosure of the documents outweighs the State's interest in nondisclosure. Higg-A-Rella, 141 N.J. at 47-48.

Plaintiff's interest concerning the public's right to know how tax dollars are being spent vis-à-vis the Board's residency policies, is not satisfied in obtaining the interview summaries of Dr. Toback and the two Board employees, and the portions of Dr., Weir's summary that we conclude are protected. In fact, plaintiff's concerns can be best addressed through a review of the unprotected summary of Dr. Weir's interview which detail the student-athletes' eligibility incident and the temporary disqualification of the WHHS football team from competing in the state championship playoffs. As Stern publicly reported, the need to update the student residency policies and procedures can prevent the

problem which led to the student-athletes' eligibility incident. Plaintiff and the public need only look to Dr. Weir's interview summary to understand why the student residency policy was updated.

On the other hand, the interview summaries of Dr. Toback and the two Board employees reference their opinions and experience with the then current residency procedures. For the reasons explained under OPRA, the Board's interest in non-disclosure outweighs the public right to know.

B.

Stern's Handwritten Notes

Plaintiff asserts in his appeal that Stern's handwritten notes of the unidentified WVHS person must be released because they are not covered under any exception or exemption under OPRA and the judge's reasoning, that the notes are unintelligible, is an insufficient basis for preserving its confidentiality. We disagree.

Under OPRA, a document is a "any paper . . . maintained or kept on file in the course of his or its official business by" an agent of the District. N.J.S.A. 47:1A-1.1. This document does not appear to be a government record, as it is one-page of handwritten notes of an attorney retained by the Board comprising about two dozen words with symbols and other notations that for the most part

22

are undecipherable. Yet, even if we consider the notes government records, they are covered by the deliberative process privilege because they were created as part of the investigation process into the student-athlete residency incident to aid the Board in developing new policies and procedures.

We agree with the judge's reasoning – the notes "do[] nothing to illuminate exactly the contents of the interview that spawned that particular note," and appear to be Stern's mental impressions. Moreover, plaintiff has not overcome the presumption of nondisclosure by showing a "substantial or compelling need" for Stern's handwritten notes. See Integrity, 165 N.J. at 85. Plaintiff makes no showing that the notes are relevant to his reason for requesting the document, which is to assess the investigation and the credibility of the Board's new residency policy and procedures. As noted above, the interview summary of Dr. Weir, Stern's public report, and the new residency policy alone are sufficient for plaintiff and other members of the public to assess the credibility of the Board's recommendations. Because Stern's unintelligible notes add nothing to plaintiff's concerns, plaintiff is not entitled to them under OPRA.

Our conclusion that Sterns' single page of handwritten notes is not disclosable under OPRA remains the same under our common law right of access analysis. Applying the same reasoning expressed under OPRA, the notes

are not public records under the common law. And even if they were, plaintiff has not shown a particularized need for Stern's handwritten notes or whether the information he needs is not available from other sources. Of the documents being sought, plaintiff's legitimate quest to understand the Board's new residency initiatives can be accomplished through the part of Dr. Weir's interview summary that we have determined should be released.

C.

Itemized Legal Bills

Defendants argue in their cross-appeal that the judge erroneously granted plaintiff access to special counsel's unredacted itemized legal bills. They maintain the witness' identities and subject matter identifications should be redacted based on the deliberative process privilege and the personnel record exception, under McGee v. Twp. of E. Amwell, 416 N.J. Super. 602, 615 (App. Div. 2010). Otherwise, the nature of the decision-making process for the residency policy would be revealed and employees would effectively be discouraged from any future discussion with or recommendations to their superiors. Lastly, defendants maintain plaintiff is not entitled to the legal bills because he has not established a "particularized need" but rather a "general desire to learn more about the [i]nvestigation"; which does not overcome their

interest in confidentiality.  See Asbury Park Press, Inc. v. State, Dep't of Health, 233 N.J. Super. 375, 646 (App. Div. 1989).

It is undisputed the invoices are government records under OPRA and thus subject to public access.  N.J.S.A. 47:1A-1.1.  Therefore, the legal invoices are not covered under the deliberative process privilege and personnel records exception.  The question is whether they contain any information disclosing the Board's decision-making process or would effectively discourage any discussion or recommendations from employees to their superiors in the future.  The itemized bills indicate the names of the two Board employees and the unidentified WVHS person interviewed by special counsel.  Given our ruling that these individuals' names should not be revealed, logic dictates their names be redacted from the legal bills.  This redaction would not restrict plaintiff's right under OPRA to obtain copies of the bills.  Accordingly, we need not address whether the bills should be disclosed under the common law right of access.  Hence, subject to the noted redactions, we see no bar to the disclosure of the bills under common law as plaintiff has a right to know the amount and basis for expenditure of public funds.

In sum, we affirm the final judgment that plaintiff is not entitled to: (1) interview summaries of Dr. Toback and the two unidentified Board employees; and (2) the single page of handwritten notes of an unidentified WVHS person. We affirm plaintiff is entitled to the interview summary of Dr. Weir but reverse to the extent that we order the summary's sections titled "Dr. Weir's Recommendations on Procedure" and "Dr. Weir's Recommendations on other people to interview," must be redacted. We affirm the award of costs to plaintiff. Lastly, we affirm plaintiff is entitled to copies of special counsel's itemized legal bills but reverse to the extent that we order the names of the Board employees and the unidentified WVHS person redacted.

Affirmed in part, reversed and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0039-18T3