970 A.2d 414 (2009)
407 N.J. Super. 230
Tina RENNA, Plaintiff-Appellant,
v.
COUNTY OF UNION, Defendant-Respondent.
No. A-0821-07T2
Superior Court of New Jersey, Appellate Division.
Argued November 17, 2008.
Decided May 21, 2009.
*415 Richard Gutman, Montclair, argued the cause for appellant.
Robert E. Barry, Union County Counsel, argued the cause for respondent (Mr. Barry and Moshood Muftau, Assistant County Counsel, on the brief).
Debra A. Allen, Deputy Attorney General, argued the cause for Amicus Curiae Government Records Council (Anne Milgram, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Allen, on the brief).
Thomas J. Cafferty, Lyndhurst, argued the cause for Amicus Curiae New Jersey Press Association (Scarinci & Hollenbeck, attorneys; Mr. Cafferty, Nomi I. Lowy and Lauren E. James, on the brief).
Before Judges CARCHMAN, R.B. COLEMAN and SIMONELLI.
The opinion of the court was delivered by
CARCHMAN, P.J.A.D.
The narrow issue that we address on this appeal is whether the Open Public Records Act, N.J.S.A. 47:1A-1 to -13 (OPRA), requires that a request for government records be submitted on an agency's official form.
The positions of the parties are simply statedplaintiff Tina Renna asserts that the plain language of OPRA, combined with the Legislature's policy of providing ready access to public records, mandate that an official form be optional. Defendant Union County (the County) counters that the plain language of OPRA and the Legislature's policy in providing for a streamlined method to process OPRA requests mandate that the government form be utilized for all requests made under OPRA.
We hold that all requests for OPRA records must be in writing; that such requests shall utilize the forms provided by the custodian of the records; however, no custodian shall withhold such records if the written request for such records, not presented on the official form, contains the requisite information prescribed in N.J.S.A. 47:1A-5(f). Where the requestor fails to produce an equivalent writing that raises issues as to the nature or substance of the requested records, the custodian may require that the requestor complete the form generated by the custodian pursuant to N.J.S.A. 47:1A-5(g).
To provide appropriate context for consideration of the issue in dispute, we briefly set forth the relevant facts.
*416 The dispute arose following the issuance of an advisory opinion issued by Amicus curiae, the Government Records Council (GRC), a administrative agency established under OPRA. N.J.S.A. 47:1A-7. Among its enabled authority, the GRC shall:
issue advisory opinions, on its own initiative, as to whether a particular type of record is a government record which is accessible to the public;
prepare guidelines and an informational pamphlet for use by records custodians in complying with the law governing access to public records;
prepare an informational pamphlet explaining the public's right of access to government records and the methods for resolving disputes regarding access, which records custodians shall make available to persons requesting access to a government record[.]
[N.J.S.A. 47:1A-7(b).]
On February 17, 2006, the GRC issued Advisory Opinion No. 2006-01 addressing the issue: "What Constitutes a Valid Open Public Records Request" under OPRA. In the opinion, the GRC acknowledged that it had previously "taken the position that public agencies must accept OPRA requests, even when they are not submitted on the public agency's official OPRA records request form[,]" but that it had decided to change this policy due to practical problems agencies experienced without a form. The GRC noted "[m]any agencies grant non-OPRA requests for such documents as building inspection reports," however, some had "experienced difficulty in distinguishing between non-OPRA requests" and OPRA requests, which require a response within certain time frames. In addition, the agencies were concerned that "vague or unspecific records requests, usually associated with the use of a non-official OPRA request form," would cause employees to respond in an untimely fashion and risk being penalized under OPRA. After a discussion of the applicable statutory and case law, the GRC concluded that "the statute requires all requestors to submit OPRA requests on an agency's official OPRA records request form" and "[w]hen an agency has not adopted its own official OPRA records request form, requestors may submit their records request on the Model Request Form located on the Government Records Council website."
On March 10, 2006, the custodian of records of the County sent an e-mail to all known and regular OPRA requestors, including plaintiff, notifying them of the GRC's Advisory Opinion 2006-01 and the County's new policy requiring an official OPRA form for all future requests. On that same date, the County also sent an e-mail attaching a copy of its official OPRA request form.
Three days later, on March 13, plaintiff e-mailed the County requesting "an electronic copy of Union County resolution number 42-2005." A few hours later, the County sent a reply e-mail directing plaintiff to the March 10, 2006 e-mails notifying her of defendant's new policy and directing plaintiff to use the form that had been attached to the e-mails. Plaintiff replied, stating:
I believe that both the GRC Advisory Opinion No. 2006-01 and Union County's practice of requiring use of its official form violate OPRA Section 5g, which provides that "A request for access to a government record shall be in writing...."
Please state whether or not it is Union County's position that it will not process my email request because I have not *417 used Union County's official OPRA form.
Defendant responded by e-mail:
Mrs. Renna: If you have an issue with the advisory opinion, kindly address your concerns to the Government Records Council. However, I am obligated to follow the regulations promulgated by the Government Records Council. I am respectfully requesting you to do the same and please submit your request on the forms emailed to you on Friday [March 10, 2006].
Thereafter, on March 28, 2006, plaintiff filed a verified complaint and an order to show cause in the Superior Court, Union County.[1] After the County filed an answer, the matter was transferred to us; however, on June 1, 2007, we determined that as the Advisory Opinion was not final, we had no jurisdiction. Renna v. County of Union, No. A-5687-05, 2007 WL 1574535 (App. Div. June 1, 2007), and transferred the matter back to the Law Division.
In the Law Division, the judge determined that plaintiff was not entitled to relief and concluded that OPRA requests were to be made in writing on forms provided by the County. The judge dismissed plaintiff's complaint, and this appeal followed.
Since the focal point of this opinion is the interpretation of OPRA, we first address the standards of statutory interpretation that inform our decision. When dealing with statutory interpretation, the Legislature's intent is paramount. Burnett v. County of Bergen, 198 N.J. 408, 421, 968 A.2d 1151 (2009); State v. Smith, 197 N.J. 325, 332, 963 A.2d 281 (2009); DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). The Supreme Court has held that "[a] court should not resort to extrinsic interpretative aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation." DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039 (internal quotations omitted). The words utilized in a statute must be ascribed "`their ordinary meaning and significance'... [and be read] `in context with related provisions so as to give sense to the legislation as a whole.'" Hardy v. Abdul-Matin, 198 N.J. 95, 101, 965 A.2d 1165 (2009) (quoting DiProspero, supra, 183 N.J. at 493, 874 A.2d 1039).
We are precluded from "`rewrit[ing] a plainly-written enactment of the Legislature or presum[ing] that the Legislature intended something other than that expressed by way of the plain language.'" Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553, 964 A.2d 741 (2009) (quoting O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002)). "[C]ourts are not to read into a statute words that were not placed there by the Legislature." Smith, supra, 197 N.J. at 332, 963 A.2d 281.
However, "if there is ambiguity in the statutory language that leads to more than one plausible interpretation," we "may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction." DiProspero, supra, 183 N.J. at 492-93, 874 A.2d 1039 (internal quotations omitted). See also Bosland, supra, 197 N.J. at 553, 964 A.2d 741 (noting that if "the plain language of a statute is not clear or if it is susceptible to more than one possible meaning or interpretation, the Court looks to extrinsic secondary sources to serve as its guide"). We will also look to extrinsic evidence "if a plain reading of the statute leads to an *418 absurd result or if the overall statutory scheme is at odds with the plain language." DiProspero, supra, 183 N.J. at 493, 874 A.2d 1039 (citing Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 392-93, 774 A.2d 495 (2001)). See also Burnett, supra, 198 N.J. at 235, 968 A.2d 1151.
Our consideration of the narrow issue in this case implicates two of OPRA's statutory provisions. The first, N.J.S.A. 47:1A-5(f), provides in pertinent part:
The custodian of a public agency shall adopt a form for the use of any person who requests access to a government record held or controlled by the public agency. The form shall provide space for the name, address, and phone number of the requestor and a brief description of the government record sought. The form shall include space for the custodian to indicate which record will be made available, when the record will be available, and the fees to be charged. The form shall also include the following: (1) specific directions and procedures for requesting a record; (2) a statement as to whether prepayment of fees or a deposit is required; (3) the time period within which the public agency is required by P.L. 1963, c. 73 (C. 47:1A-1 et seq.) as amended and supplemented, to make the record available; (4) a statement of the requestor's right to challenge a decision by the public agency to deny access and the procedure for filing an appeal; (5) space for the custodian to list reasons if a request is denied in whole or in part; (6) space for the requestor to sign and date the form; (7) space for the custodian to sign and date the form if the request is fulfilled or denied.
[(Emphasis added).]
Immediately following this provision, N.J.S.A. 47:1A-5(g) provides in pertinent part:
A request for access to a government record shall be in writing and hand-delivered, mailed, transmitted electronically, or otherwise conveyed to the appropriate custodian. A custodian shall promptly comply with a request to inspect, examine, copy, or provide a copy of a government record. If the custodian is unable to comply with a request for access, the custodian shall indicate the specific basis therefore on the request form and promptly return it to the requestor. The custodian shall sign and date the form and provide the requestor with a copy thereof.
[(Emphasis added).]
We begin our analysis by applying the basic principles of statutory interpretation that we previously described. The County and GRC, in it amicus brief, argue that a concurrent reading of both sections (f) and (g) demonstrates the legislative intent that OPRA requires all requests be submitted on an official form[2]. Specifically, defendant asserts that N.J.S.A. 47:1A-5(f) requires custodians to *419 adopt a form, and although N.J.S.A. 47:1A-5(g) states that a request must be in writing, this section also "makes specific use of the word `form'" twice in both the third and fourth sentences. Defendant argues that the "form" referred to in N.J.S.A. 47:1A-5(g) must be the same "form" described in the preceding section, N.J.S.A. 47:1A-5(f).
Plaintiff argues that N.J.S.A. 47:1A-5(g) provides "the requestor the option of either using the form or simply writing a letter or e-mail" and that "the official form is useful for requestors who lack confidence or ability to create their own record request." Plaintiff further contends that in the case where a requestor does not use an official form and the agency cannot comply with the request, the clerk can take a blank form, reference the request, indicate the basis for the noncompliance, sign and date said form and return it to the requestor.
However, the County counters, N.J.S.A. 47:1A-5(g) requires that the custodian provide a basis for non-compliance on "the request form" and sign and date "the form." (Emphasis added). The Legislature's use of the word "the" suggests that "the request form" being referenced is that the request must be "in writing," not a blank request form. Ibid.
NJPA, in its amicus brief, argues that "N.J.S.A. 47:1A-5(f), which requires the clerk to provide a form, is in a different section than the one that provides that requests are to be in writing, N.J.S.A. 47:1A-5(g)." NJPA further argues that if the Legislature intended that OPRA require a form, it would have provided expressly that "[a] request for access to a government record shall be in writing and submitted on the form adopted by the government agency from which the records are being requested."
We agree with this latter interpretation of the statute. We deem the legislative mandate for a form to be one of accommodation rather than restrictive. To suggest otherwise would create a circumstance that runs counter to both the language used and the policy enunciated by the Legislature in its enactment of OPRA.
Recently, the Supreme Court reiterated the guiding principle that OPRA reflects New Jersey's commitment to openness and transparency in governmental actions and activities. In Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 966 A.2d 1054 (2009), the Court stated:
New Jersey can boast of a long and proud "tradition[] of openness and hostility to secrecy in government." North Jersey Newspapers v. Passaic County Bd. of Chosen Freeholders, 127 N.J. 9, 16, 601 A.2d 693 (1992). Our well-established common law protection of a citizen's right to access, see Loigman v. Kimmelman, 102 N.J. 98, 505 A.2d 958 (1986), is complemented by the Legislature's enactment of OPRA, which was intended to enhance the citizenry's statutory rights to government maintained records. See N.J.S.A. 47:1A-1 to -13.
In Mason v. City of Hoboken, in the course of a thorough review of OPRA's procedures for the release of public documents, this Court acknowledged the plain intent of New Jersey's newest public records statute "to insure that government records, unless exempted, are readily accessible to citizens." 196 N.J. 51, 57, 951 A.2d 1017 (2008); see N.J.S.A. 47:1A-1. OPRA's clear purpose, we explained, is "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." Mason, supra, 196 N.J. at 64, 951 A.2d 1017 (internal quotations omitted). The statute employs a *420 straightforward means to accomplish its goal. Ibid. OPRA declares that it shall be our public policy to require that government records "be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1.
[Id. at 283-84, 966 A.2d 1054.]
In Mason v. City of Hoboken, 196 N.J. 51, 951 A.2d 1017 (2008), the Court reviewed in detail the steps necessary to ensure full and open access to records. In describing the relevant procedures, the Court noted that "[v]arious provisions in the statute are designed to foster cooperation among requestors and agencies and reasonably accommodate their interests. For example, if a request `would substantially disrupt agency operations,' a custodian may deny it `after attempting to reach a reasonable solution with the requestor.' N.J.S.A. 47:1A-5(g)." Id. at 66, 951 A.2d 1017.
While a plausible reading of N.J.S.A. 47:1A-5(f) and N.J.S.A. 47:1A-5(g) together suggests that the Legislature intended requests to be submitted in the form described in N.J.S.A. 47:1A-5(f), such rigid interpretation contradicts the spirit and intent of the underlying statute. We do not deem the subsequent reference in N.J.S.A. 47:1A-5(g), which requires the custodian to indicate the basis for non-compliance on "the request form" and sign and date "the form," coupled with the introduction of a "form" in N.J.S.A. 47:1A-5(f), to demonstrate a legislative intent that mandates requests be submitted on the form adopted by the custodian.[3]
We also note the record demonstrates that there is a proliferation of various forms available from custodians, including some online forms. For example, the GRC's "official request form" available online allows a person to fill out the form and submit a request electronically, and the response will come in the form of a receipt for the records. There is no reason why the same receipt could not be generated by a fully informative written request absent an official form. Certainly, if the written request were deficient or unclear, the same receipt, among other things, could request the submission of additional information or the custodian-designed form.
The Law Division judge accepted defendant's argument that New Jersey Bldrs. Assoc. v. New Jersey Council on Afford. Hous., 390 N.J.Super. 166, 915 A.2d 23 (App.Div.), certif. denied, 190 N.J., 394, 921 A.2d 448 (2007), supports the proposition that a form request is required. We disagree. In New Jersey Bldrs. Assoc., the issue before us was whether the plaintiff was entitled to attorney's fees for the custodian's failure to produce the records sought within seven days as required by OPRA. Id. at 175, 915 A.2d 23. In making our determination, we focused on whether the plaintiff's request constituted a "brief description of the record sought" under N.J.S.A. 47:1A-5(f). Id. at 178, 915 A.2d 23. We noted that "N.J.S.A. 47:1A-5(f) requires custodians of public records to develop forms for OPRA requests that `provide space for ... a brief description of the government record sought.'" Id. at 176, 915 A.2d 23. We denied attorney's fees, concluding that the plaintiff's "five-page, thirty-nine paragraph request bears no resemblance to the record request envisioned by the Legislature, which is one submitted on a form that *421 `provide[s] space for ... a brief description of the record sought.'" Id. at 178, 915 A.2d 23 (quoting N.J.S.A. 47:1A-5(f)). Here, the trial judge found that we "understood the requirement of OPRA that a request be in `writing,' to mean that the official form required by N.J.S.A. 47:1A-5(g) must be used to request a public record under OPRA."
Our comments regarding the form in New Jersey Bldrs. Assoc. dealt with the expansive nature of the request rather than how it was transmitted. We employed a similar analysis in Gannett N.J. Partners, LP v. County of Middlesex, 379 N.J.Super. 205, 877 A.2d 330 (App.Div. 2005). In Gannett, we considered whether the plaintiff's request constituted "`a brief description of the government record sought.'" Id. at 211-12, 877 A.2d 330 (quoting N.J.S.A. 47:1A-5(f)). As in New Jersey Bldrs. Assoc., we noted the language in N.J.S.A. 47:1A-5(f) required the custodian to adopt a form; however, in Gannett, the plaintiff "sent an e-mail to Middlesex County requesting production under OPRA of the `federal subpoena[s] issued to the county and all information supplied to the U.S. Attorney or other federal authorities in response to the subpoenas.'" Id. at 210, 877 A.2d 330 (emphasis added). We made no mention of the plaintiff's request by e-mail rather than an official form but focused on the content of the request rather than its form.
The vast majority of other jurisdictions fostering public access to government records have adopted policies and procedures that eschew the necessity for official forms and in some instances, even written requests. Most states permit oral requests.[4]
*422 Other states require writings.[5] Two states provide official forms but leave the design and application of the forms to local discretion.[6] In other states, the statute is silent as to whether a request may be in writing or oral, and there is no case law or administrative code that provides instruction.[7]
No state has adopted a statute or procedure that limits access to records to a written request on an official form or denies access if the submission is not on an official form.[8]
*423 In our neighboring states, the requirements vary. New York's statute, the Freedom of Information Law, N.Y. Pub. Off. Law § 84 to 90 (2009), provides that requests must be in writing. N.Y. Pub. Off. Law § 89(3)(a) (2009) (stating "[e]ach entity subject to the provisions of this article, within five business days of the receipt of a written request for a record reasonably described, shall make such record available to the person requesting it") (emphasis added). However, the agency created to hear complaints under the Freedom of Information Law has held that "there is nothing in the Freedom of Information Law that requires that a person seeking records must use an agency's prescribed form." Comm. on Open Gov't FOIL-AO-16607, http://www.dos.state.ny. us/coog/ftext/f16607.htm.
In Pennsylvania, before the statute was recently amended, it stated that "[a]gencies may fulfill verbal requests for access to records and anonymous requests for access to records." 65 P.A. Stat. Ann. § 66.2(b) (2008). If a person requesting the records "wishes to pursue the relief and remedies provided for in this act, the requester must initiate such relief with a written request." Ibid. Effective January 1, 2009, the Legislature amended the statute to include a new section that "adopts" a uniform form. The new section states in pertinent part:
Section 505. Uniform form.
(a) Commonwealth and local agencies.  The Office of Open Records shall develop a uniform form which shall be accepted by all Commonwealth and local agencies in addition to any form used by the agency to file a request under this act. The uniform form shall be published in the Pennsylvania Bulletin and on the Office of Open Record's Internet website.
(b) Judicial agencies.  A judicial agency or the Administrative Office of Pennsylvania Courts may develop a form to request financial records or may accept a form developed by the Office of Open Records.
(c) Legislative agencies.  A legislative agency may develop a form to request legislative records or may accept the form developed by the Office of Open Records.
[65 P.A. Stat. Ann. § 67.505 (2009)]
The language in the previous section 65 P.A. Stat. Ann. § 66.2(b) (2008), now codified as 65 P.A. Stat. Ann. § 67.702 (2009), remains the same. It states:
Section 702. Requests.
Agencies may fulfill verbal, written or anonymous verbal or written requests for access to records under this act. If the requester wishes to pursue the relief and remedies provided for in this act, the request for access to records must be a written request.
[Ibid.]
Finally, Delaware's statute is silent as to whether requests can be oral or written. Del.Code Ann. Tit. 29, § 10003 to 10005 (2009).
We acknowledge the stated concern of the GRC that the form requirement allows custodians to respond "more efficiently because, by streamlining and standardizing the request process, it eliminates situations where a custodian must distinguish between non-OPRA requests routinely received for government records and OPRA requests that are subject to a more stringent time frame for response." We also recognize the public policy concern that the Legislature did not want to subject agencies to an undue burden, or to spurious lawsuits, or to guessing games as to the nature of a request, which might prompt an inappropriate response to the *424 requester. Nevertheless, these legitimate policy concerns must cede to the broader policy of governmental transparency and the right of citizens to have open and virtually unfettered access to government records.
These policies can be harmonized. This requires a balancing of the need for specificity for the custodian and the overarching objective of OPRA to insure public access to records. See Burnett, supra, 198 N.J. at 414, 968 A.2d 1151 (noting that fulfilling the aims of "OPRA[ ] ... require[s] a careful balancing of the interests at stake"). While we conclude that the Legislature did not mandate that written requests for records be made on an official form, we likewise recognize the salutary benefit served by use of a form that insures uniformity of request and response. Ultimately, the primary objective of the statutory construct is that the requester set forth in writing, and in a cogent and clear manner, the nature of the request and the other information required by N.J.S.A. 47:1A-5(f). The custodian must have before it sufficient information to make the threshold determination as to the nature of the request and whether it falls within the scope of OPRA. Accordingly, we conclude that the form should be used, but no request for information should be rejected if such form is not used.
While our view may appear to be contradictory, it is not. Other jurisdictions have adopted a similar view. In Alabama, although the statute is silent as to a writing requirement, the Supreme Court of Alabama has held that government agencies can require a form if that requirement (a) is not "implemented ... in order to dissuade or prevent any individual from acquiring access to public documents or records" and (b) does not give the custodian "the power to hinder access or refuse disclosure based on perceived necessity or established office policy." Blankenship, supra, 590 So.2d at 250. In Alaska, the statute states, "request forms may be provided by a public agency, but a request may not be denied solely because it is not on that form." Alaska Admin. Code Tit. 2, § 96.310(b) (2009). If a writing is transmitted that provides the required statutory information, the custodian shall comply with the production provisions of the statute. In the event the submitted writing, exclusive of the form, is insufficient for the custodian to fulfill its statutory responsibility, such as the record may not be subject to OPRA or the request does not contain sufficient information, the custodian may require the requester to complete the official form prepared pursuant to N.J.S.A. 47:1A-5(g). We perceive this as the exception rather than the rule.
We have adopted a similar approach in analogous circumstances. For example, in reference to the notice requirements of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to -12-3, we have held that, where the submitted information substantially complied with the Act's reporting requirement to allow the public agency an ample basis to investigate and evaluate the claim, we would not require the use of an agency form under N.J.S.A. 59:8-6. Henderson v. Herman, 373 N.J.Super. 625, 636-38, 862 A.2d 1217 (App.Div.2004). These principles apply with equal force here.
We reverse the judgment of the Law Division and remand for the entry of an order consistent with this opinion.
NOTES
[1] Both the GRC and the New Jersey Press Association (NJPA) were granted leave to appear as amicus curiae.
[2] We note that appropriate deference should be given to the GRC's Advisory Opinions since it is an administrative agency created under OPRA and is the agency charged with the enforcement of the statute. See Espina v. Bd. of Review, 402 N.J.Super. 87, 92, 952 A.2d 1108 (App.Div.2008). However, the Legislature has also granted the Superior Court concurrent jurisdiction, N.J.S.A. 47:1A-6, and the statute specifically states that "a decision of the [GRC] shall not have value as a precedent for any case initiated in the Superior Court pursuant to ... [N.J.S.A.] 47:1A-6." N.J.S.A. 47:1A-7(e). When the issue on appeal involves the agency's interpretation of the law, our review is de novo. See Utley v. Board of Review, Dep't of Labor, 194 N.J. 534, 551, 946 A.2d 1039 (2008) (noting that appellate courts are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue" (internal quotations omitted)).
[3] Another panel of this court, in a different context and in an opinion filed simultaneously with this opinion, has addressed the interplay between these two sections of the statute. Paff v. City of East Orange, 407 N.J.Super. 221, 970 A.2d 402, 2009 WL 1405769 (App. Div.2009).
[4] Arkansas, Ark.Code Ann. § 25-19-105(a)(2)(B) (2009) (a request may be made "in person, by telephone, by mail, by facsimile transmission, by electronic mail, or by other electronic means provided by the custodian"); California, L.A. Times v. Alameda Corridor Transp. Auth., 88 Cal.App.4th 1381, 107 Cal.Rptr.2d 29, 38, review denied, No. S098586, 2001 Cal. Lexis 6236, at *1 (Cal. Sept. 12, 2001) (holding that "[t]he California Public Records Act plainly does not require a written request"); Colorado, Citizens Progressive Alliance v. Southwestern Water Conservation Dist., 97 P.3d 308, 312 (Colo.Ct. App.2004) (holding that Colo. Rev. Stat. § 24-72-205(1) (2009) gives custodians the discretion to allow oral or written requests); Connecticut, Conn. Dep't of Pub. Safety v. FOIC, 29 Conn.App. 821, 618 A.2d 565 (1993) (affirming a finding that, while a written request for copies is required under Conn. Gen.Stat. § 1-212 (2009), no written request is necessary to inspect under Conn. Gen.Stat. § 1-210(a) (2009)); Florida, Dade Aviation Consultants v. Knight Ridder, 800 So.2d 302, 305 n. 1 (Fla.Dist.Ct.App.2001) (holding that "[t]here is no requirement in the Public Records Act that requests for records must be in writing"); Georgia, Howard v. Sumter Free Press, 272 Ga. 521, 531 S.E.2d 698, 699 (2000) (holding that "there is no requirement that requests [under the Act] be in writing"); Hawaii, Haw.Code R. § 2-71-11(a) (2009) (stating "informal" requests may be oral); Idaho, Idaho Code Ann. § 9-338(4) (2009) (allowing custodians discretion as to oral or written requests); Illinois, Donald M. Craven et al., Open Government Guide: Illinois, In Open Government Guide: Access To Public Records And Meetings In The 50 States And D.C. (Gregg Leslie & Corinna Zarek eds., 5th ed. 2006), http://www. rcfp.org/ogg/index.php (noting that custodians have discretion to require oral or written requests); Indiana, Ind.Code Ann. § 5-14-3-9(c) (2009) (stating "[i]f a request is made orally, either in person or by telephone, a public agency may deny the request orally"); Iowa, Iowa Code § 22.3(1) (2009) (requests can be "in writing, by telephone, or by electronic means"); Kentucky, Ky.Rev.Stat. Ann. § 61.872(2) (2009) ("[t]he official custodian may require written application, signed by the applicant and with his name printed legibly on the application, describing the records to be inspected") (emphasis added); Maine, Your Right to Know: The Maine Freedom of Access Act, http://www.maine.gov/foaa/request/index.shtml (stating "[t]he Freedom of Access Act[, Me.Rev.Stat. Ann. Tit. 1, § 408 to 412 (2009),] does not require that requests for public records be in writing. However, most bodies and agencies ask individuals to submit requests in writing in order to maintain a record of when the request was received and what records were specifically requested"); Massachusetts, 950 Mass. Code Regs. 32.05(3) (2009) (stating "[r]equests for public records may be oral or written"); Mississippi Miss.Code Ann. § 25-61-5 (2009) (giving custodians discretion as to requiring oral or written requests); New Mexico, N.M. Stat. Ann. § 14-2-8 (2009) (stating "[a]ny person wishing to inspect public records may submit an oral or written request to the custodian"); North Carolina, N.C. Gen.Stat. § 132-6.2A(a) (2009) (stating "[p]ersons requesting copies of public records may elect to obtain them in any and all media in which the public agency is capable of providing them"); North Dakota, N.D. Cent.Code § 44-04-18(2) (2009) (stating "[a] request need not be made in person or in writing"); Rhode Island, R.I. Gen. Laws § 38-2-3(c) (2009) (giving custodians discretion as to requiring oral or written requests); Washington, A Guide to Obtaining Public Records, http://www.atg.wa.gov/Records. aspx#requesting (stating "[a] request for public records can be initiated: In person; by mail, e-mail, or fax; or over the telephone"); Wisconsin, Wis. Stat. § 19.35(4)(b) (2009) ("stating if a request is made orally, the authority may deny the request orally"); Wyoming, Wyo. Stat. Ann. § 16-4-202(a) (2009) (giving custodians discretion as to requiring oral or written requests).
[5] Kansas, Kan. Stat. Ann. § 45-220(b) (2009) (stating "a public agency may require a written request for inspection of public records but shall not otherwise require a request to be made in any particular form"); Maryland, Md.Code Ann., State Government § 10-614(a)(1) (2009) (stating "a person or governmental unit that wishes to inspect a public record shall submit a written application to the custodian"); Michigan, Mich. Comp. Laws Serv. § 15.235(1) (2009) ("a person desiring to inspect or receive a copy of a public record shall make a written request for the public record"); South Carolina, S.C.Code Ann. § 30-4-30(c) (2009) (stating "[e]ach public body, upon written request for records made under this chapter, shall within fifteen days... of the receipt of any such request notify the person making such request of its determination and the reasons therefor")(emphasis added); Utah, Utah Code Ann. § 63G-2-204(1) (2009) (stating "[a] person making a request for a record shall furnish the governmental entity with a written request").
[6] Alabama, Blankenship v. Hoover, 590 So.2d 245, 250 (Ala. 1991); Alaska, Alaska Admin. Code Tit. 2, § 96.310(b) (2009).
[7] Arizona, Ariz.Rev.Stat. § 39-121 to -125 (2009); District of Columbia, D.C.Code Ann. § 2-531 to -540 (2009); Louisiana, La.Rev. Stat. Ann. § 44:1 to -427 (2009); Minnesota, Minn.Stat. § 13.01 to 13C.04 (2009); Missouri, Mo. Rev.Stat. § 610.010 to -.035 (2009); Montana, Mont.Code Ann. § 2-6-101 to -112 (2009); Nebraska, Neb.Rev.Stat. Ann. § 84-1408 to -1414 (2009); Nevada, Nev.Rev. Stat. Ann. § 239.001 to -.330 (2009); New Hampshire, N.H.Rev.Stat. Ann. § 91-A:1 to -9 (2009); Ohio, Ohio Rev.Code Ann. § 149.38 to -.45 (2009); Oklahoma, Okla. Stat. Tit. 51, § 24A.5 to -.18 (2009); Oregon, Or.Rev.Stat. § 192.410 to -.505 (2009); South Dakota, S.D. Codified Laws § 1-27-1 to -44 (2009); Tennessee, Tenn.Code Ann. § 10-7-101 to -702 (2009); Texas, Tex. Gov't Code Ann. § 552.001 to -.353 (2009); Vermont, Vt. Stat. Ann. Tit. 1, § 315 to 320 (2009); Virginia, Va.Code Ann. § 2.2-3700 to -3714 (2009); West Virginia, W. Va.Code Ann § 29B-1-1 to -7 (2009).
[8] There are instances when forms have been required such as where the requestors have acted inappropriately in their request for or use of the records. See e.g., Blankenship, supra, 590 So.2d 245.