NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0532-12T4


ERNEST BOZZI,

    Plaintiff-Respondent,

v.

CITY OF ATLANTIC CITY,
RHONDA WILLIAMS, RMC, AND
WILLIAM M. ENGLAND, P.E.,
CITY ENGINEER,

    Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 7, 2014**
>
> **APPELLATE DIVISION**

Argued August 6, 2013 - Decided January 7, 2014

Before Judges Messano,[1] Lihotz and Guadagno.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1588-12.

George N. Polis argued the cause for appellants.

Donald M. Doherty, Jr., argued the cause for respondent.

The opinion of the court was delivered by

LIHOTZ, J.A.D.

---

[1] Judge Messano did not participate in oral argument.  He joins the opinion with counsel's consent.  R. 2:13-2(b).

Defendants, the City of Atlantic City, the city's municipal clerk Rhonda Williams, and the city engineer William M. England, P.E. (collectively defendants), appeal from a Law Division order concluding plaintiff Ernest Bozzi suffered a violation of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. The trial court entered judgment for plaintiff and awarded attorney's fees. The judge rejected defendants' argument that the absence of a written OPRA request obviated plaintiff's recovery under the statute and also that the cost charged for providing plaintiff with a bid package for a city project was subject to the Local Public Contracts Law (LPCL), N.J.S.A. 40A:11-1 to -51.

We reverse, in part, concluding plaintiff's failure to satisfy OPRA's requirement for a written record request is fatal to recovery under the statute. Further, we affirm the order denying the claimed exception under the LPCL, concluding the requested bid specifications are government records, not otherwise excepted from OPRA's fee limits.

On February 3, 2012, plaintiff requested a copy of bid specifications for award of a thirty-three month contract to provide heating, ventilation, and air conditioning maintenance and service for the Clayton G. Graham Public Safety Building. Plaintiff went to Williams's office. Williams is designated as

the official records custodian of Atlantic City. There, a staff member directed plaintiff to the city engineer's office. Plaintiff then presented his request to a staff member in England's office. Plaintiff asserted the staff member told him an OPRA form was "not necessary." That same day, plaintiff was provided with the sixty-nine page bid specification package and charged a flat fee of twenty-five dollars, which he paid.

Plaintiff filed an order to show cause and a three-count complaint, alleging defendants violated OPRA, the common law right to access, and the Civil Rights Act (the Act), N.J.S.A. 10:6-1 to -2. The complaint asserted OPRA limited copying costs of public documents to five cents per page, making the fee charged for the material excessive. Plaintiff sought a refund of $21.55,[2] along with counsel fees and costs.

The matter proceeded summarily. Defendants filed an answer and responding certifications. Williams detailed the City's OPRA policy and stated no OPRA request was filed by plaintiff. England explained the bid specifications, when prepared, "require[d] specialized and skilled services usually by professional and experienced staff in consultation with other City departments' staff [that] are equally skilled and

---

[2] Plaintiff's complaint requested $21.80, which was later acknowledged as a mathematical error.

experienced in their respective fields." Oral argument was held, and supplemental briefs submitted.

The Law Division judge issued a written opinion. He determined defendants violated OPRA, after finding the requested "public records . . . were public bid specifications pursuant to N.J.S.A. 40A:11-23.1, not competitive contract proposals as contemplated by N.J.S.A. 40A:11-4.5." Accordingly, the judge concluded the $25 "blanket fee for distribution of public bidding documents under N.J.S.A. 40A:11-23[.1]" was unlawful as charges were subject to the copying limits of N.J.S.A. 47:1A-5(b). Judgment was entered for plaintiff as a "prevailing party," along with counsel fees in an amount to be set pursuant to N.J.S.A. 47:1A-6. A subsequent counsel fee petition was considered, and plaintiff was awarded $10,096.05. The same order enjoined defendants from future OPRA violations and specifically restrained the imposition of a flat fee for provision of bid specifications. This appeal ensued.

Defendants argue plaintiff's failure to submit a written OPRA request is fatal to relief under the statute. Further, defendants maintain the provision of bid specifications falls outside OPRA's scope and is governed by the LPCL.

In our examination of these issues, we must consider certain legal principles. First, we note the applicability of

OPRA is a legal question. K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 349 (App. Div. 2011), certif. denied, 210 N.J. 108 (2012). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Whether a municipality appropriately responded to a record request and the manner the request was effectuated are legal issues subject to our plenary review. Sussex Commons Assocs., LLC v. Rutgers, 416 N.J. Super. 537, 548 (App. Div. 2010), rev'd on other grounds, 201 N.J. 531 (2012).

Second, in undertaking our review,

> we are guided by the rules governing statutory interpretation. Primarily, "[i]n interpreting a statute, our role 'is to determine and effectuate the Legislature's intent.'" Allen v. V & A Bros., Inc., 208 N.J. 114, 127 (2011) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)). We are obligated to glean the Legislature's intention from the words of the statute, giving them their ordinary meaning. Burnett v. Cnty. of Bergen, 198 N.J. 408, 421 (2009); see also N.J.S.A. 1:1-1 (stating a statute's "words and phrases shall be read and construed with their context" and "given their generally accepted meaning"). "To that end, 'statutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole.'" Burnett, supra, 198 N.J. at 421 (quoting Bedford v. Riello, 195 N.J. 210, 224 (2008)).

> [Newark Morning Ledger Co. v. N.J. Sports &
> Exposition Auth., 423 N.J. Super. 140, 159-
> 160 (App. Div. 2011).]

See also Waterfront Comm'n of N.Y. Harbor v. Mercedes-Benz of N. Am., Inc., 99 N.J. 402, 414 (1985) (holding our construction is guided by consideration of individual statutory components in the context of the entire enactment). "Statutes that deal with the same matter or subject matter should be read in pari materia and construed together as a unitary and harmonious whole." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 438 (2013) (quotation marks and citations omitted).

Finally, we are "guided by the legislative objectives sought to be achieved by the statute." Id. at 429 (citing Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012)). The legislative purpose in enacting OPRA was to assure ready access to government records "for inspection, copying, or examination by the citizens . . . ." N.J.S.A. 47:1A-1. "OPRA was specifically designed 'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Newark Morning Ledger Co., supra, 423 N.J. Super. at 160 (quoting Kovalcik v. Somerset Cnty. Prosecutor's Office, 206 N.J. 581, 588 (2011)).

Defendants initially maintain the trial judge erred in concluding OPRA applied to these facts because plaintiff did not submit a written OPRA request. Also, because "the most basic yet procedurally necessary element of an OPRA claim is lacking," defendants conclude the attorney fee award must be set aside.

Defendants advanced this argument before the trial judge, who determined:

> While [p]laintiff's [c]omplaint makes reference to "an OPRA request" and there is some muddled discussion regarding whether one was partially prepared, it's clear from the submissions of counsel and [c]ertifications that a written OPRA request form was never formally completed and submitted to the [defendants] by the [p]laintiff.
>
> . . . .
>
> While it is true . . . "all requests for OPRA records must be in writing" that doesn't end the discussion but, rather, merely begins the conversation that the [c]ourt and counsel must have on the issues raised by this litigation. Whether . . . a claim by a citizen is an "OPRA case" is not determined by whether . . . an OPRA form is utilized. The fee guidelines of OPRA are not triggered by the use [of] an OPRA form prepared by a municipality but, rather, whether . . . the fees assessed to a member of the public are lawful, i.e., established by a particular statute authorizing the same or whether there are no guidelines, in which case OPRA guidelines must control.

The judge concluded plaintiff's document request was for a public record, triggering OPRA's copying cost limitations, a conclusion defendants argue is erroneous.

In pertinent part, OPRA provides:

> A request for access to a government record shall be in writing and hand-delivered, mailed, transmitted electronically, or otherwise conveyed to the appropriate custodian. A custodian shall promptly comply with a request to inspect, examine, copy, or provide a copy of a government record. If the custodian is unable to comply with a request for access, the custodian shall indicate the specific basis therefor on the request form and promptly return it to the requestor. The custodian shall sign and date the form and provide the requestor with a copy thereof.
>
> [N.J.S.A. 47:1A-5(g).]

The requirement for a written request is not gratuitous. See Renna v. Cnty. of Union, 407 N.J. Super. 230, 232 (App. Div. 2009) ("We hold that all requests for OPRA records must be in writing[.]"). The detailed process set forth in subsection (g), as well as the other subsections of N.J.S.A. 47:1A-5, purposefully devises a uniform procedure to be followed by one making a request for government records and one responding to that request. "Various provisions in the statute are designed to foster cooperation among requestors and agencies and reasonably accommodate their interests." Mason v. City of Hoboken, 196 N.J. 51, 66 (2008). The writing requirement gives

the government entity a clear understanding of the nature of what is sought and triggers an obligation to comply with OPRA's provisions to fulfill the request.

The Legislature had the option of allowing oral requests. Indeed, when OPRA was adopted, similar legislation existed in other states that permitted various means of communicating a government record request. See Renna, supra, 407 N.J. Super. at 241 n.4 (providing a survey of state legislation that allows oral requests for copies of government records). New Jersey's Legislature specifically chose not to permit oral requests, and instead sought to guard against contests over the specifics of an application by mandating each request "shall be in writing and hand-delivered, mailed, transmitted electronically, or otherwise conveyed to the appropriate custodian." N.J.S.A. 47:1A-5(g). See also Paff v. City of E. Orange, 407 N.J. Super. 221, 226 (App. Div. 2009).

"[C]ourts are not to read into a statute words that were not placed there by the Legislature." State v. Smith, 197 N.J. 325, 332 (2009). We are precluded from "'rewrit[ing] a plainly-written enactment of the Legislature . . . [or] presum[ing] that the Legislature intended something other than that expressed by way of the plain language.'" Bosland, supra, 197 N.J. at 553 (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

In this light, we conclude the express requirement for a written record request, unequivocally set forth in N.J.S.A. 47:1A-5(g), cannot be ignored merely because a government record was sought. We are not free to disregard the writing requirement, which would render the statutory provision meaningless, and create a circumstance running counter to the express language in OPRA. See Renna, supra, 407 N.J. Super. at 238; see also Evans v. Atl. City Bd. of Educ., 404 N.J. Super. 87, 92 (App. Div. 2008) ("[I]t is appropriate to consider the doctrine of 'expressio unius est exclusio alterius,' which suggests that the mentioning of one or more things excludes others.").

Plaintiff suggests his written OPRA form was not accepted. Defendants refute this claim. Had plaintiff proven his efforts to submit an OPRA request were rebuffed, he would certainly have a basis for relief under the statute, as a governmental entity may not sidestep its obligations to comply with OPRA by declining to accept a written OPRA request. However, plaintiff's allegations were unsupported by the evidence. The reviewing judge specifically determined "a written OPRA request form was never formally completed and submitted to the [defendants] by the [p]laintiff."

We also reject plaintiff's argument suggesting subsection (b)'s limitation on the charge for provision of copies of government records operates independently of subsection (g), allowing recovery, notwithstanding the failure to submit a written request. The sections are combined under one statutory provision, the unitary structure of which must be read together. Burnett, supra, 198 N.J. at 421. As we noted, we may not ignore the Legislature's deliberate mandate imposing requisites upon the requester and the record holder. Prior opinions addressing charges for use of self-service copy machines to copy deeds, mortgages and lien information are inapposite to the facts at hand. See Dugan, supra, 376 N.J. Super. at 278.[3]

Consequently, the determination that defendants violated OPRA must be reversed. Further, the order granting an attorney fee award in favor of plaintiff as a prevailing party is unsupported and also must be vacated. Fee shifting can be

---

[3] We recognize that in Dugan v. Camden County Clerk's Office, 376 N.J. Super. 271 (App. Div.), certif. denied, 184 N.J. 209 (2005), we concluded an OPRA request was triggered, despite the absence of the submission of a written request. Id. at 278. However, the facts of that case presented unique circumstances. In that matter, the records sought — "deeds, mortgages and other lien information" — were required to be kept by the county clerk in a public area, accessible to self-service public users. Id. at 273, 278. This case, however, does not present a similar type of document request, that is, documents mandated to be accessible for self-service by the public. Therefore, Dugan is distinguishable on its facts.

sustained only when the statute applies in the first instance. Spectraserv v. Middlesex Cnty. Util. Auth., 416 N.J. Super. 565, 583-84 (App. Div. 2010).

For completeness, we address defendants' argument the bidding documents are not public records and their provision, as well as any fee for doing so, is governed by the LPCL, not OPRA. Additional statutory background will aid understanding.

The LPCL requires "certain contracts entered into by local public entities be procured through a public bidding process detailed in that statute." Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 169 N.J. 135, 140 (2001). The LPCL provides that all contracts for the performance of municipal work or services must be advertised for and awarded to the lowest responsible bidder. See N.J.S.A. 40A:11-4. The Supreme Court has underscored the importance of the unique public policy concerns of the LPCL, as necessary to "'secure for the public the benefits of unfettered competition,' and to 'guard against favoritism, improvidence, extravagance, and corruption.'" Nat'l Waste Recycling, Inc. v. Middlesex Cnty. Improvement Auth., 150 N.J. 209, 219 (1997) (quoting Terminal Constr. Corp. v. Atl. Cnty. Sewage Auth., 67 N.J. 403, 410 (1975)).

Statutory amendments enacted in January 2000 added N.J.S.A. 40A:11-4.1 to -4.5, which afford public entities an alternative means of advertising for specific public services. Weidner v. Tully Envtl., Inc., 372 N.J. Super. 315, 318 (App. Div. 2004). The competitive contracting provisions recognize that a governmental entity may satisfy a need for services where other considerations outweigh the public benefit of cost savings. The amendments reflect the Legislature's intent to provide a flexible method to award bids by the use of a scoring and evaluation process, rather than awarding bids at the lowest cost. This process ensures bidding remains fair and free from fraud. N.J.S.A. 40A:11-4.4(b).

Among the added provisions regarding competitive contracting proposals is N.J.S.A. 40A:11-4.5(a), which permits the contracting unit to charge the greater of $50 or the cost of reproducing the documentation for a request for proposal. Defendants maintain this section also guides a municipality's fee charged for requests for proposals on bidding contracts, thus overriding OPRA's payment provisions.

The bid specifications sought by plaintiff for maintenance services over a thirty-three month period were for an award of a public contract governed by the LPCL. See N.J.S.A. 40A:11-3(a), (b) (exempting contracts that do not exceed $17,500 per contract

year and do not extend beyond twenty four months); N.J.S.A. 40A:11-2 (exempting a number of transactions from the public bidding requirement, none of which apply here).

We concur with the trial judge's conclusion that plaintiff's request for the bid specifications for the proposed maintenance contract falls outside the specialized goods and services eligible to be obtained through competitive contracting proposals identified in N.J.S.A. 40A:11-4.1(b). Further, we agree N.J.S.A. 40A:11-4.5(a) is generally inapplicable to all contracts and is limited to requests for competitive contracting proposals. Finally, no provision of the LPCL, which for the most part was enacted long before OPRA, addresses a fee amount to obtain copies of the contracting unit's request for bid specifications. Accordingly, no provision of the LPCL would specifically exempt plaintiff's request from OPRA.

We turn to whether the bid specifications are government records covered by OPRA. In determining whether a document request submitted to a governmental entity is subject to OPRA, we analyze whether the material requested constitutes a government record.

As noted, OPRA defines a government record broadly, to include

> any paper, written or printed book, document, drawing, map, plan, photograph,

> microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, or that has been received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof, including subordinate boards thereof.
>
> [N.J.S.A. 47:1A-1.1.]

Defendants rely on the final sentence of this definitional provision, which states: "The terms shall not include inter-agency or intra-agency advisory, consultative, or deliberative material." Ibid.

The exception at issue "has long been understood to encompass the common-law deliberative process privilege[.]" McGee v. Twp. of E. Amwell, 416 N.J. Super. 602, 618 (App. Div. 2010). "The deliberative process privilege 'permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Educ. Law Ctr. ex rel. Abbott v. N.J. Dep't of Educ., 198 N.J. 274, 285 (2009) (quoting In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 83 (2000)). "The privilege exists 'to ensure

free and uninhibited communication within governmental agencies so that the best possible decisions can be reached. . . .'" McGee, supra, 416 N.J. Super. at 619 (quoting Educ. Law Ctr. ex. rel. Abbott, supra, 198 N.J. at 286) (citation omitted)).

The initial burden falls on the governmental entity to show that the documents it seeks to shield are pre-decisional and deliberative in nature and contain opinions, recommendations, or advice about governmental policies. Integrity, supra, 165 N.J. at 88.

In order to claim the protection of this provision, a custodian must satisfy two requirements. Id. at 84-85. First, the custodian must show that the document is "pre-decisional," or "generated before the adoption of an agency's policy or decision." Id. at 84. Second, the custodian must establish that the document is "deliberative in nature, containing opinions, recommendations, or advice about agency policies." Id. at 84-85.

Guided by this test, it is clear defendants cannot satisfy these requirements. While we can agree inter-departmental input was necessary for the creation of the bid specifications and the exception might shield any interdepartmental documents exchanged in creating the final bid specification package, we cannot accede to the suggestion that the final document requested by

16                                                                        A-0532-12T4

plaintiff was pre-decisional or deliberative. The bid specifications were intended to be distributed, not protected from disclosure. Consequently, we reject as unfounded defendants' suggestion the "advisory, consultative, or deliberative material" exception applies.

Finding no provision in the LPCL to allow a standard fee for defendants' provision of bid specifications and, also, concluding the documents sought fall within OPRA's encompassing definition of government records and are not shielded by a statutory exception, we must conclude that had plaintiff submitted a written OPRA request seeking the bid specifications, defendants' fee for duplication must accord with the limits of N.J.S.A. 47:1A-5(b), that is, "$0.05 per letter size page or smaller, and $0.07 per legal size page or larger[,]" or the "actual costs of duplication." Ibid.

We recognize bid specifications may not be the type of government records the Legislature had in mind when adopting OPRA. However, it is up to the Legislature to craft an exception to OPRA's fee limits for provision of such documents, not the courts.

In summary, we affirm the trial court's order finding the bid specifications are government records subject to OPRA. However, we reverse the May 22, 2012 order finding defendants

17                                          A-0532-12T4

violated OPRA and concluding plaintiff is a prevailing party entitled to counsel fees and costs.  Finally, we reverse the August 17, 2012 attorney fee award.

Affirmed in part and reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18                                        A-0532-12T4