**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2088-20

S.W. and J.W.
o/b/o J.J.W.,

    Plaintiff-Appellant,

v.

ELIZABETH BOARD OF
EDUCATION,

    Defendant-Respondent.

_____

Argued March 9, 2022 – Decided June 21, 2022

Before Judges Whipple, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3514-20.

Walter M. Luers argued the cause for appellants (Cohn Lifland Pearlman Herrmann and Knopf, LLP, attorneys; Walter M. Luers, on the briefs).

Richard P. Flaum argued the cause for respondent (DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, attorneys; Richard P. Flaum and Mallory J. Ullrich, on the brief).

PER CURIAM

Appellants S.W.[1] and J.W. (the parents) appeal on behalf of their son, J.W., from a February 17, 2021 Law Division order issued by Judge Daniel R. Lindemann denying their request for an order to show cause and dismissing with prejudice their complaint against the Elizabeth Board of Education (Board) alleging a violation of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. After carefully reviewing the record in view of the arguments of the parties and the applicable legal principles, we affirm substantially for the reasons expressed in Judge Lindemann's eleven-page written opinion.

The procedural history and pertinent facts are set forth in Judge Lindemann's thorough opinion and need only be briefly summarized. This case arises from a Free Appropriate Public Education (FAPE) due process petition brought by the parents on behalf of their son related to the special education services that were being provided to him, and specifically, whether he was entitled to door-to-door transportation services. The matter was transmitted to the Office of Administrative Law (OAL) as a contested case. The Administrative Law Judge (ALJ) conducted a pre-hearing conference and

---

[1] Pursuant to Rule 1:38-3(d)(1), we use initials and pseudonyms to preserve the confidentiality of the family.

A-2088-20

instructed the parties to agree to stipulate to as many documents as possible. The record further shows that any discovery concerns were to be informally and immediately brought to the ALJ's attention.

Four months later, the parents, now represented by counsel, requested a complete copy of their son's student records from the Board's solicitor. The solicitor provided 148 pages of documents to appellants, including the student's grades, progress reports, attendance records, and special education records. The parents claimed that the documents that were provided in discovery did not include the records of their son's participation in the District's Early Intervention Program. The parents demanded those additional documents in a letter to the Board's solicitor. Their letter cited to several statutes/regulations, including Family Educational Rights and Privacy Act (FERPA) of 1974, 20 U.S.C. § 1232g; Individuals with Disabilities Education Act (Education of the Handicapped Act) (IDEA), 20 U.S.C. § 1415(b)(1); and OPRA.

The solicitor promptly responded that the additional documents requested were not relevant to the OAL proceeding because they had no bearing on the parents' due process petition. The solicitor maintained that the Board had provided all documents it was required to provide. For reasons that are not clear to us, and notwithstanding that discovery concerns were to be brought to the

ALJ's attention, the parents did not file a motion in the OAL proceeding to compel discovery. On September 30 and October 7, 2020, the ALJ conducted due process hearings via conference call. The discovery dispute was not raised to the ALJ.

Instead, the parents sent the Board a request pursuant to OPRA. That request was made by means of a letter to the Board's solicitor, rather than to the District's records custodian. The Board denied any obligation to provide documents under OPRA because no valid OPRA request had been submitted to the District's records custodian, nor to an officer, employee, or office of the District. The Board acknowledged that OPRA requires "[a]ny officer or employee of a public agency who receives a request for access to government record[s]" to forward that request to the custodian of the record, but argued that the statutory language clearly imposed "no such obligation [upon] attorneys representing government agencies."

The parents filed a verified complaint in the Law Division claiming the Board's failure to produce the additional documents was a denial of public records under N.J.S.A. 47:1A-5(i) and a violation of OPRA. The parents claimed that the letter to the Board's solicitor was appropriate because Rule of

Professional Conduct (RPC) 4.2[2] prohibited them from communicating directly with the District. They argued the letter request to the solicitor was thus adequate to trigger the District's obligations under OPRA.

Judge Lindemann rejected the parents' arguments, ruling in favor of the Board because the parents failed to send their document request to the proper custodian as expressly required by OPRA. The trial judge explained that

> strict compliance [with OPRA] is necessary, and not at all an unfair burden, because the consequences against the public entity for failure to comply and meet its obligation gives the requesting member of the public an entitlement to counsel fees. [As] such counsel fees come from the public, from the taxpayers, . . . the statute's design is exactly intended to be strictly enforced against a non-complying public entity[,] . . . and that is exactly why an OPRA request must be a proper OPRA request . . . so that no delay is possible to thwart the ability of the public entity to meet its obligation of compliance.

Judge Lindemann also rejected the parents' argument that RPC 4.2 barred them from serving the OPRA request on the records custodian, reasoning that

---

[2] RPC 4.2 forbids a lawyer representing a client from "communicat[ing] about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter . . . unless the lawyer has the consent of the other lawyer, or is authorized by law or court order to do so . . . ." Rules of Pro. Conduct r. 4.2 (2021)

A-2088-20

the RPC allows communications "authorized by law."  Accordingly, the judge dismissed their OPRA complaint with prejudice.

This appeal follows.  The parents raise the following issues for our consideration:

> POINT I
>
> COUNSEL FOR DEFENDANT HAD A DUTY TO PROVIDE THE RECORDS CUSTODIAN WITH A COPY OF PLAINTIFFS' OPRA REQUEST, WHICH WAS "DEEMED DENIED" BECAUSE DEFENDANT NEVER RESPONDED TO THE OPRA REQUEST.
>
>> A.   PLAINTIFFS' OPRA REQUEST WAS DEEMED DENIED.
>>
>> B.  THE JULY 28, 2020 LETTER WAS AN OPRA REQUEST[.]
>>
>> C.  COUNSEL FOR DEFENDANT HAD AN OBLIGATION TO FORWARD THE OPRA REQUEST TO THE RECORDS CUSTODIAN[.]
>>
>> D.   THE ETHICAL OBLIGATION OF AN ATTORNEY WHEN TRANSMITTING OPRA REQUESTS DURING LITIGATION[.]

Because we affirm for the reasons explained in Judge Lindemann's thorough and cogent opinion, we need not re-address the parents' arguments, but we add the following comments.

"[D]eterminations about the applicability of OPRA and its exemptions are legal conclusions, and are therefore subject to de novo review."  In re N.J.

6

Firemen's Ass'n Obligation to Provide Relief Applications Under OPRA, 230 N.J. 258, 273–74 (2017).

A reviewing court's primary "objective [in] statutory interpretation is to discern and effectuate the intent of the Legislature." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012). "If the Legislature's intent is clear on the face of the statute, then we must apply the law as written" Ibid. "Absent a clear indication from the Legislature that it intended statutory language to have a special limiting definition, we must presume that the language used carries its ordinary and well-understood meaning." State v. Lenihan, 219 N.J. 251, 262 (2014). "[L]egislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless." State v. Regis, 208 N.J. 439, 449 (2011) (quoting Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 613 (1999)). Only when statutory language is ambiguous, or "leads to more than one plausible interpretation," may the court "turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" DiProspero v. Penn, 183 N.J. 477, 492–93, (2005) (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

"OPRA allows public access to all government records that are not exempt from public disclosure." Commc'ns Workers of Am. v. Rousseau, 417 N.J.

7

Super. 341, 355 (App. Div. 2010). The detailed procedure for submitting an OPRA request "purposefully devises a uniform procedure to be followed by one making a request for government records and one responding to that request." Bozzi v. City of Atl. City, 434 N.J. Super. 326, 333 (App. Div. 2014); see also Paff v. City of E. Orange, 407 N.J. Super. 221 (App. Div. 2009). OPRA clearly identifies the responsibilities of the requestor and the agency to ensure prompt access to records. See N.J. Builders Ass'n v. N.J. Council on Affordable Hous., 390 N.J. Super. 166,176 (App. Div. 2007). Our courts have held that we cannot disregard the requirements of submitting an OPRA request, as it would "render the statutory provision meaningless, and create a circumstance running counter to the express language in OPRA." See Bozzi, 434 N.J. Super. at 334 (holding the express requirement for a written record request cannot be ignored).

OPRA requires a request for access to a government record to be "in writing and hand-delivered, mailed, transmitted electronically or otherwise conveyed to the appropriate custodian." N.J.S.A. 47:1A-5(g) (emphasis added). OPRA defines "custodian of a government record" or "custodian" to mean, "in the case of a municipality, the municipal clerk and in the case of any other public agency, the officer officially designated by formal action of that agency's director or governing body, as the case may be." N.J.S.A. 47:1A-1.1.

In this instance, the parents submitted a letter to counsel for the District, intended to serve as an OPRA request. We agree with Judge Lindemann that District counsel was not a custodian within the meaning of OPRA and was not the officially designated agent authorized to receive such requests. The parents cite no legal authority to support their position, acknowledging they raise a question of first impression. They ask us to establish a new rule for making OPRA requests based on broad policy and fairness considerations rather than the clear and unambiguous statutory text. We decline to do so, especially given that the parents in this case eschewed the obvious remedy of bringing the discovery dispute to the attention of the ALJ presiding over the OAL matter.

We add that we also agree with the Law Division judge that RPC 4.2 did not prohibit the parents or their counsel from filing an OPRA request with the District's designated records custodian. As Judge Lindemann aptly noted, the RPC includes an explicit exception that permits contact with a represented party when the law authorizes such contact. The comments to RPC 4.2 confirm that the rule "ensur[es] a citizen's right of access to government decision makers" remain[s] "unrestricted[.]" Rules of Pro. Conduct r. 4.2 cmt. (2003).

To the extent we have not addressed them, any remaining arguments raised by the parents lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2088-20